CITY of NORTH LITTLE ROCK and North Little Rock
Airport Commission *v.* PULASKI COUNTY, Arkansas and
B.A. McIntosh, Pulaski County Assessor

97-714                                              968 S.W.2d 582

Supreme Court of Arkansas
Opinion delivered April 16, 1998

*Timothy Davis Fox,* for appellants.

*Karla M. Burnett,* Ass't County Att'y and *Amanda Mankin,* Staff Att'y, for appellees.

ROBERT L. BROWN, Justice. Appellants City of North Little Rock and the North Little Rock Airport Commission (jointly referred to in this opinion as North Little Rock) filed an amended appeal in circuit court from a decision of the Pulaski County Court that affirmed the assessment for *ad valorem* tax purposes of

eleven parcels of real property located within the domain of the North Little Rock Municipal Airport. North Little Rock claimed that Act 438 of 1995 designated the eleven parcels as public property and, thus, the parcels should be exempt from taxation under Ark. Const. art. 16, § 5, and removed from the County tax rolls. North Little Rock also requested that the property tax assessments for the years 1992 through 1995 be declared null and void.

Appellees, Pulaski County and the County Assessor (County), answered and moved for a declaratory judgment on the grounds (1) that Act 438 of 1995 should not be given retroactive effect; and (2) that Act 438 violated Ark. Const. art. 16, § 6, which renders void any law exempting property from taxation other than as provided in the Arkansas Constitution.

The circuit court agreed with the County and entered an order declaring that the General Assembly had violated the separation-of-powers doctrine when it enacted Act 438 of 1995. *See* Ark. Const. art. 4, § 2. It did so, according to the court, by usurping the judicial fact-finding function and by declaring through legislation that airport property is acquired and held exclusively for public purposes. The circuit court further determined that because Act 438 established that certain airport property was *per se* exempt as being used exclusively for public purposes under Ark. Const. art. 16, § 5(b), this violated the proscription against laws exempting property from taxation other than as provided in the Arkansas Constitution. *See* Ark. Const. art. 16, § 6. The matter then went to hearing before the court on the issues of whether the eleven parcels were exempt after this court's opinion in *City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995), and whether the County's revaluation efforts complied with Ark. Code Ann. § 26-26-1011 (Repl. 1997), which requires assessments to occur between the first Monday in January and July 1 of a given year.

At the hearing before the circuit court, Judy Wheeler, manager of the North Little Rock Municipal Airport, testified that the airport is a general aviation airport that owns land and provides

service to single and twin-engine planes but not for commercial air traffic. She testified that the airport enters into leases with individuals and private entities to use its land to house hangars, fuel stations, repair stations, and the like, with the lessees being responsible for the construction of their own improvements. She explained that in the past the leases were silent on who was required to pay county *ad valorem* taxes on real property because there had never before been a county assessment. However, the leases were changed in 1992 to require that the lessee pay those taxes.

Ms. Wheeler testified that the North Little Rock Airport received a "Notice of Property Revaluation" dated July 11, 1993, that purported to notify North Little Rock of the assessment of the entire amount of airport property, including runways, taxiways, and common areas. She explained that North Little Rock then went before the County Equalization Board to complain about the entire property's being assessed. On September 9, 1993, the Equalization Board determined that only the eleven parcels which were leased to private entities should be assessed.

The crux of Ms. Wheeler's testimony on direct examination was that hangars and other improvements by lessees were an integral part of the operation and maintenance of a municipal airport and that North Little Rock could ill afford to construct the improvements itself. Furthermore, FAA regulations did not require North Little Rock to construct hangars and terminal facilities. Rather, the FAA only required that suitable space and reasonable prices be made available for those who wished to do so. On cross-examination, Ms. Wheeler admitted that although the "Notice of Property Revaluation" reflected the date July 11, 1993, she did not know when the assessment of *ad valorem* taxes actually occurred.

Following the hearing, the circuit court entered its order, finding the following: (1) any issues regarding 1992 *ad valorem* taxes were moot; (2) taxes for the year 1993 were assessed in com-

pliance with § 26-26-1011; and (3) the eleven parcels were not exempt under Ark. Const. art. 16, § 5, and *City of Little Rock v. McIntosh, supra.*

■ North Little Rock now appeals from both orders of the circuit court and urges, first, that the circuit court erred in declaring Act 438 unconstitutional. We disagree. In reviewing the constitutionality of legislative acts, we start with a presumption of constitutional validity. *Board of Trustees v. City of Little Rock,* 295 Ark. 585, 589, 750 S.W.2d 950, 952 (1988). Statutes will not be struck down unless they conflict with the constitution "clearly and unmistakably." *Id., citing Board of Trustees of Municipal Judges and Clerks Fund, City of Little Rock v. Beard,* 273 Ark. 423, 620 S.W.2d 295 (1981); *Buzbee v. Hutton,* 186 Ark. 134, 52 S.W.2d 647 (1932).

■ ■ The Arkansas Constitution specifically exempts from *ad valorem* taxes "public property used exclusively for public purposes." Ark. Const. art. 16, § 5(b). In the past, we have declined to give a judicial definition to the phrase "public purpose" because its meaning is not exact, nor is it prone to a static definition. *Holiday Is. Suburban Improvement Dist. #1 v. Williams,* 295 Ark. 442, 749 S.W.2d 314 (1988). *See Murphy v. Epes,* 283 Ark. 517, 678 S.W.2d 352 (1984). Instead, we look to legislative language for such pronouncements. *See Murphy v. Epes, supra; Kerr v. East Central Arkansas Housing Authority,* 208 Ark. 625, 187 S.W.2d 189 (1945). The Act must prevail unless there is something in the Arkansas Constitution which restrains the legislature from saying that a designated course of conduct or a policy is for the public welfare, or unless the thing authorized is so demonstrably wrong that reasonable people would not believe that this was the legislative intent. *Murphy,* 283 Ark. at 525, 678 S.W.2d at 357. We reverse a legislative public-purpose declaration only if the legislature acted arbitrarily, unreasonably, or capriciously. *Id.* at 525-26. 678 S.W.2d at 357.

In *City of Little Rock v. McIntosh, supra,* this court held that certain tracts of property at the Little Rock Municipal Airport leased to private entities were not exempt from *ad valorem* taxation under Ark. Const. art. 16, § 5. Our holding was based on the fact

that the City of Little Rock had failed to prove that the tracts leased to private businesses, which were conceded to be "public land," were being used "exclusively" for public purposes. In doing so, we focused on the actual use of the land and whether that use was solely for public purposes. The private businesses involved in *McIntosh* included four car rental companies, one aircraft modification company, two aircraft service companies, and three fixed-based operators.

Eleven days after the *McIntosh* decision, the General Assembly passed Act 438 of 1995, with an emergency clause. The Act provided in pertinent part:

> (a) The ownership, operation, and management of municipal airports . . . and their related properties and facilities, including without limitation runways, hangars, terminal facilities, and suitable areas or space which are made available to those who are willing and otherwise qualified to offer transportation services to the public or support services to aircraft operators, all as may be necessary or desirable for the servicing of aircraft in commercial or general aviation or for the comfort and accommodation of air travelers traveling in commercial or general aviation, are vital to the economic welfare of the state of Arkansas and its people and such airports and their related properties and facilities are declared and confirmed to be used exclusively for public purposes.
>
> (b) All airport property and related properties and facilities owned by a municipality, county, or other public agency for the purposes enumerated in this section are declared to be acquired and used exclusively for public and governmental purposes and as a matter of public necessity and shall be exempt from ad valorem taxation to the same extent as other property used exclusively for public purposes.

1995 Ark. Acts 438, now codified at Ark. Code Ann. § 14-356-102 (Supp. 1997).

In its appeal, North Little Rock agrees with the circuit court that the General Assembly violated the doctrine of separation of powers by declaring various uses involved in the operation of an airport to be exempt from *ad valorem* taxation. Despite that acknowledgment, North Little Rock contends that the General Assembly did have the authority to declare what property falls into

the category of property used for public purposes and that the circuit court erred in not recognizing that fact. Thus, North Little Rock urges this court to cut and paste and salvage that portion of subsection (a) of Act 438 which declares that certain activities are used for public purposes. In doing so, North Little Rock also urges that we strike the word "exclusively" in subsection (a).

▪ In determining whether the invalidity of part of an act is fatal to the entire legislation, this court looks to (1) whether a single purpose is meant to be accomplished by the act, and (2) whether the sections of the act are interrelated and dependent upon each other. *U.S. Term Limits, Inc. v. Hill*, 316 Ark. 251, 872 S.W.2d 349 (1994); *Wenderoth v. City of Ft. Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971); *Faubus v. Kinney*, 239 Ark. 443, 389 S.W.2d 887 (1965).

The purpose of Act 438 can be garnered from its title:

> AN ACT to Amend Title 14, Subtitle 22, Chapter 356 of the Arkansas Code for the Purpose of Declaring That Airports Owned by Municipalities, Counties, or Other Public Agencies are Used Exclusively for Public Purposes and Therefore Exempt From Ad Valorem Taxation; Declaring an Emergency; and for Other Purposes.

1995 Ark. Acts 438. This theme of tax exemption is repeated in subsection (b) and the Act's Emergency Clause, and the test for exemption — exclusively used for public purposes — is repeated in subsection (a) as well. The clear purpose of the Act is to undertake a function which is reserved to the judiciary, that is, the declaration of property exempt from *ad valorem* taxes because of its exclusive use for public purposes.

▪ Furthermore, it is obvious that the provisions of the act, only two in number, and both of which contain language conceded to be infirm by North Little Rock, are dependent upon each other and interrelated and evince the General Assembly's intent to pass the act as a whole or not at all. *U.S. Term Limits, Inc. v. Hill, supra*; *Wenderoth v. City of Fort Smith, supra*. Although a severability clause is included in Act 438, that factor alone is not determinative. *U.S. Term Limits, Inc. v. Hill, supra*. Under the circumstances, we are loath to strike subsection (b) of Act 438 as

unconstitutional and strike the word "exclusively" in subsection (a), when that same word is used in the Act's title. Were we to do so, it would smack of legislative drafting on our part.

■ In short, we draw a clear distinction between the General Assembly's declaration of what is a public purpose on the one hand, which is entirely legitimate, and a *per se* determination by the General Assembly that certain private property is actually used exclusively for public purposes, and thus exempt from tax, on the other. The latter, as the circuit court correctly observed, is a judicial function performed only after appropriate fact-finding by the trial court. For the foregoing reasons, we conclude that Act 438 must be struck in its entirety.

The dissent emphasizes our holding in *Hogue v. The Housing Authority of North Little Rock*, 201 Ark. 263, 144 S.W.2d 49 (1940), where we held the Housing Authorities Act (Act 298 of 1937) to be constitutional. In doing so, we discussed in *Hogue* whether property acquired by the housing authorities would be exclusively used for public purposes pursuant to Article 16, § 5, of the Arkansas Constitution. We concluded that the purpose of Act 298 was slum clearance, which is a public purpose, and that the property acquired by the housing authorities was exclusively used for public purposes and, thus, exempt from *ad valorem* taxes. Absent in our analysis in *Hogue* was any discussion of separation of powers or any consideration of whether the General Assembly had overstepped its bounds in *declaring* a tax exemption. Accordingly, because the separation-of-powers issue was not reached, or even considered in *Hogue*, we do not deem it to be governing authority for the case at hand.

For its second point, North Little Rock contends that the 1993 tax was illegal because it was not assessed before July 1, 1993, as required by Ark. Code Ann. § 26-26-1101 (Repl. 1992). Because North Little Rock received a "Notice of Property Revaluation" dated July 11, 1993, it contends that the assessment could not have been timely. As further evidence, North Little Rock claims that the initial assessment was improper because it covered the entire airport and was later reassessed in either August or September 1993 by the County Board of Equalization with respect to

the eleven parcels at issue. North Little Rock also shows us that the July 11, 1993 notice included an appraised land value of $0, which would not have resulted in any tax liability.

The County responds that North Little Rock failed to satisfy its burden of proving when the appraisal and assessment occurred because notice of assessment is not proof of when the assessment actually occurred. The County is correct. North Little Rock appears to believe that it can make this allegation of an untimely assessment without following up with proof. Surely, the date of a notice of revaluation is not conclusive proof of when the assessment actually took place. Because North Little Rock has not met its burden in this regard, there is no basis for reversal.

Affirmed.

CORBIN and THORNTON, JJ., concur in part and dissent in part.

RAY THORNTON, Justice, concurring in part and dissenting in part. The majority has correctly determined that the city of North Little Rock did not prove that the 1993 tax assessment on airport property was invalid because of Pulaski County's failure to timely make an assessment. As pointed out by the majority, the allegation of an untimely assessment by the county must be supported by proof, and the trial court did not err in determining that the city had not met the burden of proof. I concur with the majority's conclusion that, under well established principles of law, the General Assembly does not have the power to exempt property from taxation. *See, e.g., Little Rock & Fort Smith Ry. Co. v. Worthen*, 46 Ark. 312 (1885); *Tedford v. Vauix*, 183 Ark. 240, 35 S.W.2d 346 (1931). I further agree that, in deciding this case, we should "draw a clear distinction between the General Assembly's declaration of what is a public purpose on the one hand, which is entirely legitimate, and a per se determination by the General Assembly that certain private property is . . . exempt from tax, on the other." However, because I believe the interpretation of this statute affords the court the opportunity of drawing that distinction between the provisions of the statute that are void, and those provisions that legitimately and properly articulate public-policy

considerations, I respectfully dissent from the majority's conclusion that the entire act must be invalidated.

In accordance with the well-established presumption of constitutional validity of a legislative enactment, we have specifically held that a statutory provision that is virtually identical to the provisions of subsection (a) of Act 438 of 1995 is constitutional. *Hogue v. The Housing Authority of North Little Rock*, 201 Ark. 263, 144 S.W.2d 49 (1940). In 1937, the General Assembly adopted Act 298, which authorized the creation of housing authorities in certain cities and in all counties for the stated public purpose of clearing slums and building housing projects. Section 23 of that Act provided in part as follows:

> Section 23. Tax Exemption and Payments in Lieu of Taxes. The property of an authority is declared to be public property used for essential and exclusively public and governmental purposes, and not for profit, and such property and an authority shall be exempt from all taxes and special assessments of the State or any State Public Body thereof."

This provision of the Act was attacked because it contained language that declared such property to be used for exclusive public purposes, and declared that such property should be exempt from taxes. In *Hogue*, we considered section 5 of Article 16 of our constitution, which provides in part:

> All property subject to taxation shall be taxed according to its value . . . . Provided, further, that the following property shall be exempt from taxation; public property used exclusively for public purposes . . .; and buildings and grounds and materials used exclusively for public charity.

We further considered section 6 of Article 16 of our constitution, which provides that "All laws exempting property from taxation other than as provided in this Constitution shall be void." The argument was vigorously presented to us that the statute was void in attempting to extend an exemption from taxes, and we determined that the statute was not unconstitutional, reasoning as follows:

> The point is made and insisted upon that the property of the Housing Authority is not exclusively used for public or charitable

> purposes and that before it may be exempted from taxation such property must be exclusively used for this purpose. We think a fair construction of the act is that all the property acquired by [the Housing Authority] is to be used and will be used in the clearance of slum areas and the furnishing of safe and sanitary dwelling accommodations free from conditions of overcrowding and want of air and light prevailing in slum areas.

*Hogue*, 201 Ark. at 272, 144 S.W.2d at 54. After citing cases from Tennessee and Texas interpreting similar statutory and constitutional provisions, we stated:

> We, therefore, hold that the act in question is not vulnerable because it exempted the property of the Housing Authority from all taxes and special assessments by the state or any public body thereof.

*Id*. at 274, 144 S.W.2d at 55.

The issue of the constitutionality of Act 298 of 1937 was presented to us again in *Kerr v. East Central Arkansas Regional Housing Authority*, 208 Ark 625, 187 S.W.2d 189 (1945), where we said:

> Public policy is declared by the General Assembly; not by courts. Unless there is something in the Constitution restraining the Legislature from saying that a designated course of conduct or a policy is for the public welfare, or unless the thing authorized is so demonstrably wrong that reasonable people would not believe that such was the legislative intent, the Act must prevail.
>
> Since essentials of Act 298 were sustained in the *Hogue* case, subsequently adhered to, and since the distinction to be drawn is not susceptible of being measured, graded, or determined by ratio or known formula, it must again be held that the legislative finding is binding and that the purpose to be served is a public one.

*Id*. at 630, 187 S.W.2d at 192.

The principle that the General Assembly should declare the public policy of the State and that its declarations as to public purpose will prevail unless the legislature acted arbitrarily, unreasonably, or capriciously has been firmly established. *See, e.g., Murphy v. Epes*, 283 Ark. 517, 678 S.W.2d 352 (1984). Based on that

principle, the legislature has adopted a number of definitions of "public property used exclusively for public purposes." A few examples are illustrative:

> (a) It is hereby found and determined by the Seventy-Eighth General Assembly that all property owned by the Arkansas State Highway Commission or the Arkansas State Highway and Transportation Department is public property used exclusively for public purposes.

Ark. Code Ann. § 26-3-308 (Repl. 1997).

> All tollway projects, and all the properties thereof, are legislatively determined and declared to be public properties used exclusively for public purposes and the legislative intent is that tollway projects, and all properties thereof, shall be exempt from ad valorem taxes under and pursuant to the provisions of Arkansas Constitution, Article 16, Section 5.

Ark. Code Ann. § 14-303-104 (1987).

> (a) All transit systems formed under this chapter, and all the properties thereof, are declared to be public properties used exclusively for public purposes. (b) The legislative intent of this section is that these transit systems, and all property thereof shall be exempt from: (1) Ad valorem taxes under and pursuant to the provisions of Arkansas Constitution, Article 16, § 5[.]

Ark. Code Ann. § 14-334-106 (1987).

Similar declarations of legislative intent to define uses of property as being for public purposes are found in Ark. Code Ann. §§ 14-164-701 (1987) (industrial facilities); 14-169-804 (1987) (urban renewal); 27-71-104 (Repl. 1994) (turnpikes); and § 26-3-301 (Repl. 1997), which lists more than a dozen uses of property that are legislatively declared to be used for public purposes, and consequently, exempted from taxation.

Until Act 438 of 1995 was adopted, the General Assembly had not established the considerations of public policy with respect to the public purpose of airport operations. Without the benefit of such a legislative declaration of public purpose, we reached a decision in *Little Rock Municipal Airport v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995), in which we concluded that a number of

airport-related operations were not exempt from ad valorem taxation as property used exclusively for public purposes. In that case, we decided that aircraft-service centers and fixed-base operators were among the operations that were not used exclusively for the public purpose of providing dependable and safe air travel. Without the benefit of a legislative declaration of public policy, we did not recognize that such operations are not only essential to providing fuel for aircraft so they can continue their journey, nor did we recognize that these operations are essential for public safety in providing, in most cases, the only radio communication between an aircraft and the airport.

It is not surprising that, promptly following our decision in *McIntosh*, the General Assembly sought, with Act 438, to inform the court of the public-policy considerations relating to the public purpose of maintaining safe and reliable facilities for those who travel by air. That declaration of public policy is a proper legislative action. However, the General Assembly also exceeded its authority by declaring that certain legislatively defined airport properties are used "exclusively" for public purposes, and exempt from ad valorem taxation. This violates principles of separation of powers, and is therefore unconstitutional and void.

Act 438 contains a severability clause providing that if any part of the act were determined to be unconstitutional, the other provisions of the act should remain valid. The policy pronouncements of Act 438 are not significantly different from the provision of Act 286 of 1937 that we have held to be constitutional, and are very similar to provisions in numerous other statutes.

Where part of an act is unconstitutional, but other provisions are valid, we have recognized the efficacy of severability clauses, and have had no difficulty in removing words or phrases, or even, entire sections from statutes when those provisions offended constitutional limitations upon legislative action. *Levy v. Albright*, 204 Ark. 657, 163 S.W.2d 529 (1942).

If an act is constitutional in part, the valid portion will be sustained if complete in itself and capable of being executed in accordance with the apparent legislative intent. *Id.* at 659, 163 S.W.2d at 531. The constitutional and unconstitutional provisions

may even be contained in the same section. *Id.* If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. *Id.* at 660, 163 S.W.2d at 531.

In *Levy*, we struck the words "The Supreme Court" from a list of courts granted original jurisdiction when the grant of jurisdiction to the supreme court exceeded constitutional limitations, but sustained the constitutionality of the act as it related to other courts, and to its general purposes.

In my opinion, Act 438 was drafted to accomplish two discrete purposes: (1) a declaration of public policy, and (2) a legislative declaration of tax exemption. We should sustain as constitutional, the public–policy declarations contained in the Act. There is only one word in Act 438 that can be interpreted as overstepping the authority of the General Assembly. The word "exclusively" is used once in section (a) and twice in section (b). I would strike the offending word "exclusively" from the Act, or, alternatively, rely on *Hogue* as authority for determining that the use of that word does not invalidate the act.

I also write to encourage legislative enactment of a more precisely drawn statute declaring that the operation of a publicly owned airport, with its runways, hangars, taxiways, instrument approach systems, terminal buildings, aircraft service and repair centers, flight training programs and facilities, and fixed–base operators, together with radio communications and other facilities necessary and essential to reliable and safe air travel for the public is declared to be public property used for a public purpose. This court should welcome legislative action to establish public policy. The application of that public policy to a particular set of facts under constitutional constraints will of course remain a judicial function.

CORBIN, J., joins.