Sharon McGHEE, Sydney McGhee, Roberto Salas,
Charles Stewart, Henry Evans, Craig Savell, and Patrick Henry Hayes,
Individually and on Behalf of a Class of Similarly Situated Persons *v.*
ARKANSAS STATE BOARD of COLLECTION AGENCIES
and Rusty Guinn, Jerry Markham, Randy Bynum, Opal Lang,
and Gary Frala, in Their Official Capacities as Board Members
of the Arkansas State Board of Collection Agencies

08-164 289 S.W.3d 18

Supreme Court of Arkansas
Opinion delivered November 6, 2008

*Arnold, Batson Turner & Turner,* by: *Todd Turner; Scholtens & Averitt,* by: *Chris Averitt,* for appellants.

*Thrash Law Firm,* by: *Thomas P. Thrash,* for appellees.

*Rose Law Firm,* by: *John T. Hardin,* for intervenor Arkansas Financial Services Association.

*Deborah Zuckerman,* AARP Foundation; *Michael Schuster,* AARP; *Jim Jackson;* and *Eric Halperin, Melissa Briggs, Daniel Mosteller,* Center for Responsible Lending, for amici curiae AARP, Arkansas Advocates for Children and Families, and Center for Responsible Lending.

*Brian G. Brooks,* for amicus curiae Arkansas Trial Lawyers Ass'n.

PAUL E. DANIELSON, Justice. Appellants Sharon McGhee, et al. (hereinafter collectively referred to as "McGhee") appeal from the circuit court's order denying their motion for declaratory judgment and finding that the Arkansas Check-Cashers Act, Arkansas Code Annotated §§ 23-52-101–23-52-117 (Repl. 2000 & Supp. 2007), was constitutional. McGhee's sole point on appeal is that the circuit court erred in denying her motion and in finding the Act constitutional. Because we hold that the Check-Cashers Act is unconstitutional in its entirety, we reverse and remand the matter for entry of an order consistent with this court's opinion.

Procedurally, this particular case, initially filed in 2003, comes to the court for the third time on appeal, following two remands. *See McGhee v. Arkansas State Bd. of Collection Agencies,* 368 Ark. 60, 243 S.W.3d 278 (2006) (*McGhee II*); *McGhee v. Arkansas State Bd. of Collection Agencies,* 360 Ark. 363, 201 S.W.3d 375 (2005) (*McGhee I*). Because the underlying facts of this case have

been set out in this court's two previous opinions, there is no need to recite them in full here. Suffice it to say, the matter was originally brought against appellees Arkansas State Board of Collection Agencies and its board members in a complaint alleging an illegal exaction and alleging that all transactions under the Arkansas Check-Cashers Act involved interest rates that violated the usury provision of the Arkansas Constitution. *See* Ark. Const. art. 19, § 13. In addition, McGhee sought a declaratory judgment that the Check-Cashers Act was unconstitutional. *See McGhee I, supra.*

Following our decision in *McGhee I*, in which we held that the circuit court erred in dismissing the case, the circuit court permitted Arkansas Financial Services Association (AFSA) to intervene in the matter.[1] *See McGhee II, supra.* Upon the filing of cross-motions for summary judgment and a hearing on the motions, the circuit court entered its order finding that McGhee had no valid illegal-exaction claim, thereby requiring the dismissal of the claim with prejudice. In addition, the circuit court found that it lacked jurisdiction to hear McGhee's declaratory-judgment claim due to the fact that she had failed to exhaust her administrative remedies. On appeal, we affirmed the circuit court's grant of summary judgment on McGhee's illegal-exaction claim, but reversed and remanded with respect to her claim for declaratory judgment, holding that McGhee was not required to first seek a declaration regarding the constitutionality of the Check-Cashers Act before the Board. *See McGhee II, supra.*

Following our decision in *McGhee II*, the circuit court held a hearing on November 20, 2007, during which McGhee again asked the circuit court to rule on the Act's constitutionality. The circuit court honored McGhee's request and asked that an order be prepared declaring that the Act was constitutional. Accordingly, an order was entered in which the circuit court denied McGhee's request for declaratory judgment and found that the Check-Cashers Act was constitutional. McGhee now appeals from that order.

McGhee asserts that the Check-Cashers Act was designed to accomplish a single purpose — to create an exception to the usury limit for short-term payday loans. She maintains that the legislature violated the Arkansas Constitution when it enacted the check-

---

[1] The circuit court also granted Arkansas Federal Credit Union's motion to intervene. *See McGhee II, supra.*

casher statutory scheme, which she claims was obviously designed to exempt certain transactions from usury analysis. Moreover, McGhee claims, the Act permits check-cashers to engage in transactions that are truly loans and that involve fees that constitute interest for usury purposes. McGhee avers that the Act at issue does nothing more than allow persons to register with a state agency so that they can assess charges that are no more than illegal interest. She claims that because the Check-Cashers Act runs contrary to Arkansas's anti-usury policy and violates article 19, section 13 of the Arkansas Constitution, the circuit court erred in finding the Act constitutional.

The Board counters, initially, that because no actual, justiciable controversy was presented to the circuit court, any declaratory judgment on the constitutionality of the Check-Cashers Act was improper. With respect to the merits of the instant appeal, the Board asserts that both the legislature and this court have carefully considered the current statutory regulations of the Act at issue, and neither found the regulations were in conflict with the constitutional doctrine of separation of powers, nor incompatible with the Arkansas Constitution. The Board additionally submits that after removing an unconstitutional provision of the statute, the General Assembly attempted to continue regulating what was once an unregulated industry for the public's benefit. It avers that McGhee cannot reasonably claim that all transactions by entities licensed under the Act are usurious. The Board urges that because the Act does not in any way attempt to limit or restrict these businesses' liability for a violation of Arkansas's usury laws, it is not clearly or unmistakably inconsistent with or in conflict with the Arkansas Constitution. The Board, finally, maintains that no provision of the Act, as currently written, violates the Arkansas Constitution, and, further, that McGhee has failed to meet her burden of proving the Act unconstitutional.

AFSA also responds, maintaining that McGhee failed to meet her burden of proving that the Act is unconstitutional. It further contends that McGhee has not presented an adequate record to this court in support of her request for relief and that there is no evidence that there was a justiciable controversy before the circuit court. In addition, AFSA urges that the General Assembly's use of definitions within the Act did not render the Act unconstitutional. McGhee replies that this court's prior decisions

in this case demonstrate that there is a justiciable controversy and that she was entitled to a declaration on the constitutionality of the Check-Cashers Act.

### I. Justiciable Controversy

We must first address the contention of the Board and AFSA that no justiciable controversy exists in the instant case, and, thus, that McGhee's request for a declaratory judgment on the constitutionality of the Act was improper. Their argument is without merit.

As McGhee points out, we at least suggested in a prior opinion that McGhee's actions with respect to her request for a declaratory judgment were proper. In *McGhee II*, we specifically rejected the argument of the Board and AFSA that McGhee was required to first seek a declaration regarding the constitutionality of the Act before the Board itself, commenting:

> Here, the heart of Appellants' complaint is that they are being injured by the regulations set forth in the Check-Cashers Act due to the fact that the Board continues to license and regulate payday lenders under this Act, thereby allowing them to charge usurious interest rates in violation of article 19, section 13. Thus, Appellants properly sought a declaration in circuit court that the Check-Cashers Act was unconstitutional. Accordingly, we reverse and remand this matter to the circuit court.

368 Ark. at 69, 243 S.W.3d at 285.

But in addition, it is clear to this court that declaratory relief lies in the instant case. Arkansas's declaratory-judgment statute provides that:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ark. Code Ann. § 16-111-104 (Repl. 2006). While this section recognizes a party's right to a declaratory judgment, a justiciable

controversy is required. *See Jegley v. Picado,* 349 Ark. 600, 80 S.W.3d 332 (2002). Declaratory relief will lie where: (1) there is a justiciable controversy; (2) it exists between parties with adverse interests; (3) those seeking relief have a legal interest in the controversy; and (4) the issues involved are ripe for decision. *See Donovan v. Priest,* 326 Ark. 353, 931 S.W.2d 119 (1996). On appeal, the question of whether there was a complete absence of a justiciable issue shall be reviewed de novo on the record of the circuit court. *See Jegley, supra.*

Here, a justiciable controversy is indeed present between McGhee and the Board as to the implementation, application, and effect of the Check-Cashers Act. McGhee, as one who has engaged in transactions authorized by an Act that she believes is unconstitutional, and the Board, which is charged with licensing and regulating the businesses engaged in these transactions, are indeed parties with adverse interests. In addition, McGhee certainly has a legal interest in the Board's exercise of its authority under the Act, and the matter is clearly ripe for decision, where the declaratory-relief claim is the sole remaining claim in the action, as previously stated by this court in *McGhee II.* Accordingly, declaratory relief lies. Moreover, we have held that a declaratory judgment is especially appropriate in disputes between private citizens and public officials about the meaning of the constitution or of statutes. *See McDonald v. Bowen,* 250 Ark. 1049, 468 S.W.2d 765 (1971). It is, therefore, clear to this court that declaratory relief was proper in the instant case.

## II. Constitutionality of the Check-Cashers Act

In reviewing the constitutionality of an act, we recognize that every act carries a strong presumption of constitutionality. *See City of Cave Springs v. City of Rogers,* 343 Ark. 652, 37 S.W.3d 607 (2001). The burden of proof is on the party challenging the legislation to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality, if it is possible to do so. *See id.* An act will be struck down only when there is a clear incompatibility between the act and the constitution. *See id.*

We previously held that section 23-52-104(b) (Repl. 2000) of the Check-Cashers Act was "an invalid attempt to evade the usury provisions of the Arkansas Constitution and, further, that such an attempt violate[d] the constitutional mandate requiring separation of powers set forth in Article 4 of the Arkansas Constitution." *Luebbers v. Money Store, Inc.,* 344 Ark. 232, 234, 40 S.W.3d

745, 746 (2001).[2] However, McGhee's claim in this case is that the Check-Cashers Act, in its entirety, violates the usury provisions of the Arkansas Constitution. The usury provisions in our constitution provide, in pertinent part:

> (a) General Loans:
>
> (i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.
>
> . . . .
>
> (b) Consumer Loans and Credit Sales: All contracts for consumer loans and credit sales having a greater rate of interest than seventeen percent (17%) per annum shall be void as to principal and interest and the General Assembly shall prohibit the same by law.

Ark. Const. art. 19, § 13(a, b).

We have held that the purpose of Arkansas's strong anti-usury policy, as reflected by the prohibition of usury in our constitution, is to protect borrowers from excessive interest rates. *See State ex rel. Bryant v. R & A Inv. Co., Inc.*, 336 Ark. 289, 985 S.W.2d 299 (1999). Moreover, we have observed that the plain language of subsection (b) of article 19, section 13 "mandates that the General Assembly prohibit usurious contracts." *Id.* at 294, 985 S.W.2d at 301. The question before us, then, is whether the Check-Cashers Act permits usurious contracts.

Only if the transaction at issue constitutes a loan and if the fees charged constitute interest will the constitutional prohibition against usurious interest rates apply. *See Luebbers, supra.* Accordingly, we must determine whether the transactions authorized by the Check-Cashers Act constitute loans and whether the fees charged constitute interest.

*a. Whether the transactions constitute loans*

Generally speaking, a deferred-presentment transaction, or "payday loan," has been described as a transaction in which the consumer writes a check, the amount of which includes the

---

[2] Consequently, the General Assembly repealed that subsection. *See* Act 1962 of 2005, § 106.

amount of the cash to be advanced to the customer, plus a service fee. *See* Dee Pridgen & Richard M. Alderman, *Consumer Credit and the Law* § 5:6 (2008). The understanding is that the business advancing the funds "will not attempt to cash the check until the due date." *Id.* On the due date, the customer "can simply allow the check to be cashed, or can renew or 'rollover' the transaction by payment" of another service fee. *Id.* In Arkansas, "deferred presentment option" has been defined by our General Assembly as:

> a transaction pursuant to a written agreement involving the following combination of activities in exchange for a fee:
>
> (A) Accepting a customer's personal check dated on the date it was written;
>
> (B) Paying that customer an amount of money equal to the face amount of that check less any fees charged pursuant to this chapter; and
>
> (C) Granting the customer the option to repurchase the customer's personal check for an agreed period of time prior to presentment of such check for payment or deposit. The term "deferred presentment" includes related terms such as "delayed deposit", "deferred deposit", or substantially similar terms evidencing the same type of transaction[.]

Ark. Code Ann. § 23-52-102(5) (Supp. 2007).

Initially, we must determine whether the transaction permitted by the Act constitutes a loan, which would then call into question whether any fee collected by a check-casher is interest. "Loan" is defined as "[a] thing lent for the borrower's temporary use; esp., a sum of money lent at interest." *Black's Law Dictionary* 954 (8th ed. 2004). "To constitute a loan, there must be a contract under which, in substance, one party transfers to the other money that the other party agrees to repay absolutely, together with additional amounts as agreed for its use, regardless of its form." 47 C.J.S. *Interest & Usury* § 192 (2008). Likewise, this court has observed that "[w]hen a loan is made, the money is borrowed for a fixed time, and the borrower promises to repay such amount at a fixed future date." *Warren v. Nix*, 97 Ark. 374, 380-81, 135 S.W. 896, 898 (1911).

It is clear from the statutory definition set forth above that an Arkansas check-casher pays, pursuant to a written agreement, an agreed-upon amount to its customer, less any fee charged pursuant

to the Act, upon presentment of the customer's check payable to the check-casher. In addition, that customer can "repurchase" his or her check within the agreed period of time. In other words, when the customer "repurchases" his or her check, he or she must pay the check-casher the amount of the check. We hold that such a transaction is a loan, as the check-casher is clearly loaning money to its customer for a fee with the expectation of repayment. *See, e.g., Betts v. McKenzie Check Advance of Florida, LLC*, 879 So. 2d 667 (Fla. Dist. Ct. App. 2004) (holding that there could be no question that what takes place in a deferred-presentment transaction is essentially an advance of money or a short-term loan).

*b. Whether the fees charged constitute interest*

■ Next, we must determine whether the fee paid to the check-casher by the customer constitutes interest. We have previously defined "interest" as "[t]he compensation which is paid by the borrower of money to the lender for its use, and, generally, by a debtor to his creditor in recompense for his detention of the debt." *Winston v. Personal Fin. Co. of Pine Bluff, Inc.*, 220 Ark. 580, 585, 249 S.W.2d 315, 318 (1952) (quoting *Bouvier's Law Dictionary*). In *Winston*, we held that fees charged under the Arkansas Installment Loan Law, which were part of the lender's overhead expense in doing business, were "in reality, nothing more or less than interest charges[.]" *Id.*, 249 S.W.2d at 318. Our review of the instant Act reveals that it specifically authorizes a check-casher's charge of "a reasonable fee to defray operational costs incurred[.]"[3] Ark. Code Ann. § 23-52-104(a) (Supp. 2007). Because that fee is

---

[3] The statute further provides:

(b) Unless otherwise authorized by this chapter, the fees authorized by this section shall not exceed the following:

(1) For the service of selling currency or check in exchange for checks, without regard to whether a deferred presentment option is involved:

(A) A fee not to exceed five percent (5%) of the face amount of the check if the check is the payment of any kind of state public assistance or federal social security benefit payable to the bearer of the check or the check is otherwise a check issued by a federal or state governmental entity;

(B) A fee not in excess of ten percent (10%) of the face amount of any personal check or money order; or

in reality an amount owed to the lender in return for the use of borrowed money, we must conclude that the fees authorized clearly constitute interest.

Our conclusion is further evidenced by the Act's requirement that any agreement for a deferred-presentment option shall contain a written explanation that "shall contain a statement of the total amount of any fees charged for the deferred presentment option expressed both in United States currency *and as an annual percentage rate.*" Ark. Code Ann. § 23-52-106(c) (Repl. 2000) (emphasis added). "Annual percentage rate," commonly referred to as an APR, is "[t]he actual cost of borrowing money, expressed in the form of an annualized *interest* rate." *Black's Law Dictionary* 831 (8th ed. 2004) (emphasis added). Despite the Act's attempt to label these charges as fees, that does not exempt them from our scrutiny. *See, e.g., Luebbers, supra.* As we have oft stated, "The law shells the covering and extracts the kernel. Names amount to nothing when they fail to designate the facts." *Luebbers,* 344 Ark. at 239, 40 S.W.3d at 750. In other words, merely because the Act so labels does not make it so. For the foregoing reasons, we hold that the fees authorized by the Act unmistakably constitute interest.

### c. *Whether the Act permits usurious charges*

■ With these conclusions in mind, we turn to McGhee's claim that the Act authorizes usurious transactions. We hold that there is no question that it does. According to our calculations,[4] if a customer wrote a check-casher a check for $100, incurring an interest charge of ten percent (10%), plus a $10 fee (both of which

---

(C) A fee not in excess of six percent (6%) of the face amount of the check in the case of all other checks. Such a fee may be collected separately or by paying the customer an amount of money equal to the face amount of the check less the appropriate fee under this chapter;

(2) For a deferred presentment option which involves a personal check, an additional fee not to exceed ten dollars ($10.00) may be charged by a check-casher; and

(3) In addition to the foregoing fees, a check-casher may charge a fee of no more than five dollars ($5.00) to set up an initial customer account and issue an optional identification card for providing check-cashing services. A replacement optional identification card may be issued at a cost not to exceed five dollars ($5.00).

Ark. Code Ann. § 23-52-104(b) (Supp. 2007).

[4] According to information previously published by the Board, which is included in the record, an APR is calculated as follows:

are authorized by the Act) for a thirty-one (31) day loan,[5] it would result in an APR of 294%.[6] In the instant case, sample contracts contained in the record reflected APR rates ranging from 168.20% to 558.71%. Such rates of interest are clearly and unmistakably usurious and in violation of article 19, section 13.[7]

 Because the Act so clearly authorizes usurious interest rates, it cannot stand. Here, AFSA argues that the Act regulates two different types of businesses, check-cashing and deferred-presentment options, and that should this court deem any portion of the Act unconstitutional, we should remand the matter to the circuit court to have those portions severed. We will not do so. To determine whether the invalidity of part of an act is fatal to the entire legislation, we look to: (1) whether a single purpose is meant to be accomplished by the act, and (2) whether the sections of the act are interrelated and dependent upon each other. *See City of North Little Rock v. Pulaski County*, 332 Ark. 578, 968 S.W.2d 582

---

1. customer check amount - payment to customer = finance charge

2. payment to customer = amount financed

3. APR = finance charge / [(amount financed x days outstanding) / 365]

[5] "A check-casher shall not defer presentment of any check for less than six (6) calendar days nor more than thirty-one (31) calendar days after the date the check is sold to the check-casher." Ark. Code Ann. § 23-52-106(d). For a six-day loan involving the same amounts, the APR would be as much as 1521%.

[6] Despite the Act's limitation on the loan amount to $400, a thirty-one day loan of that amount would still result in an APR of 168%, and a six-day loan would result in an APR of 869%. *See* Ark. Code Ann. § 23-52-106(m).

[7] Indeed, some commentators maintain that such transactions can result in an annual percentage rate of unimaginable proportion. *See* Elizabeth Renuart & Diane E. Thompson, *The Truth, the Whole Truth, and Nothing but the Truth: Fulfilling the Promise of Truth in Lending*, 25 Yale J. on Reg. 181 (2008) (suggesting 780%); Jean Ann Fox, *Fringe Bankers: Economic Predators or a New Financial Services Model?*, 30 W. New Eng. L. Rev. 135 (2007) (suggesting an annual interest rate of 390% to 780% for a $300 loan costing between $45 and $90 for a two-week term); Joseph R. Falasco, Comment, *Who's Getting Used in Arkansas: An Analysis of Usury, Check Cashing, and the Arkansas Check-Cashers Act*, 55 Ark. L. Rev. 149 (2002) (suggesting that the Arkansas Check-Cashers Act permits interest rates in excess of 2000%); Charles A. Bruch, Comment, *Taking the Pay out of Payday Loans: Putting an End to the Usurious and Unconscionable Interest Rates Charged by Payday Lenders*, 69 U. Cin. L. Rev. 1257 (2001) (suggesting annual percentage rates from 390% to 7300%, with an average of 500%).

(1998). The mere fact that an act contains a severability clause is to be considered, but is not alone determinative. *See id.*

While Act 1216 of 1999 does contain a severability clause in section 19, the Act further provides that the purpose of the Act was "to provide an Act to license and regulate check-cashing and deferred presentment option businesses." In addition, the Emergency Clause of the Act proclaims that "the effectiveness of this act on its passage or approval is essential to the operation of the deferred presentment check-cashing and other check-cashing business in Arkansas[.]" Act 1216 of 1999, § 21. Despite the Act's severability clause, it is evident to this court from both of these statements that the General Assembly's intent was to pass the Act as a whole or not at all. *See, e.g., City of North Little Rock, supra.* Furthermore, our review of the Act reveals that its provisions concerning the business of check-cashing and the business of deferred-presentment options are so intertwined that severance would be inappropriate. *See U.S. Term Limits, Inc. v. Hill,* 316 Ark. 251, 872 S.W.2d 349 (1994) (observing that when portions of an act are mutually connected and interwoven, severability is not appropriate). For these reasons, we declare the entirety of the Check-Cashers Act unconstitutional.

On a final note, it was argued to this court both in the briefs and at oral argument by those in favor of the Act that the check-cashers provide a service to Arkansas citizens that would not otherwise be available. While such a statement might have some semblance of truth, we simply "must refuse to allow arguments, however plausible, to lead us away from the plain wording and spirit of our Constitution." *Winston,* 220 Ark. at 587, 249 S.W.2d at 319. Our duty in these types of cases was eloquently stated in a previous decision involving a usurious loan pursuant to article 19, section 13:

> This section is clear and unambiguous. With the wisdom and policy of it the courts have nothing to do. It is their duty to carry into effect according to its true intent, to be gathered from its own words, without regard to the hardships incident to the faithful execution of such laws.

*German Bank v. DeShon,* 41 Ark. 331, 337 (1883) (decision under prior version of article 19, section 13, which provided that all contracts for a greater rate of interest than ten per centum per annum shall be void).

In sum, because the Check-Cashers Act clearly authorizes loans charging usurious rates of interest in contravention of the limits set forth in article 19, section 13, we hold that the Act, in its entirety, clearly and unmistakably conflicts with our constitution and is unconstitutional. We, therefore, reverse the order of the circuit court and remand for entry of an order consistent with this .opinion.

WILLS, J., not participating.