
# SUPREME COURT OF ARKANSAS

**No.** CV-15-616

|  |  |
|---|---|
| BAPTIST HEALTH SYSTEMS, MERCY HEALTH SYSTEM, AND WASHINGTON REGIONAL MEDICAL CENTER<br>        APPELLANTS/CROSS-APPELLEES | **Opinion Delivered:** March 17, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[60CV-14-2218] |
| V. |  |
| LESLIE RUTLEDGE, ARKANSAS ATTORNEY GENERAL; ARKANSAS DEPARTMENT OF HEALTH; AND NATHANIEL SMITH, MD, MPH, DIRECTOR<br>        APPELLEES/CROSS-APPELLANTS | HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br>REVERSED ON CROSS-APPEAL; DIRECT APPEAL DISMISSED. |

**ROBIN F. WYNNE, Associate Justice**

At issue in this appeal is Act 766 of 2013, known as the Arkansas Peer Review Fairness Act (the Act). Act of Apr. 5, 2013, No. 766, 2013 Ark. Acts 2890 (codified at Ark. Code Ann. § 20-9-1301 (Repl. 2014)). Before the Pulaski County Circuit Court, the case was decided on competing motions for summary judgment. The hospitals appealed, and the defendants cross-appealed. The Arkansas Hospital Association and the Arkansas Medical Society have filed *amicus curiae* briefs. We reverse the circuit court's denial of the defendants' motion for summary judgment as to whether this case presents a justiciable controversy, and we dismiss the direct appeal.

The appellants, plaintiffs below, are three Arkansas corporations that operate private hospitals in the state (the Hospitals). In June 2014, the Hospitals filed a complaint for declaratory judgment in the Pulaski County Circuit Court seeking a judgment declaring the

SLIP OPINION

Act unconstitutional under the Arkansas and United States Constitutions.[1] The complaint named the following parties as defendants: the Attorney General[2] in his official capacity; the Arkansas Department of Health; and Nathaniel Smith, MD, MPH, Director. The defendants answered, denying that they were proper parties to this action, denying that the Act is unconstitutional, and pleading various affirmative defenses. Eventually, the parties filed competing motions for summary judgment. No hearing was held, and the circuit court entered two separate orders on April 24, 2015. The circuit court denied paragraph four of the defendants' motion for summary judgment, which stated as follows:

> This Court should also enter summary judgment in favor of the state defendants because plaintiffs lack standing to file this declaratory judgment action. There is no justiciable controversy between plaintiffs and these state defendants, and plaintiffs' declaratory judgment complaint is not ripe for consideration.

Without elaboration, the circuit court ruled that the Act is not unconstitutional for the following reasons: the Act is not pre-empted by federal law; the Act does not unconstitutionally treat the Hospitals differently from other healthcare entities; the Act does not restrict the Hospitals' right to retain the attorney of their choice; the Act does not unconstitutionally interfere with the exclusive jurisdiction of Arkansas courts to regulate the practice of law; and the Act is not unconstitutionally vague and ambiguous. The Hospitals filed a timely notice of appeal; the defendants filed a timely notice of cross-appeal.

---

[1]Alternatively, appellants sought a declaration regarding the proper construction of the Act; however, the circuit court did not rule on this claim and appellants expressly abandoned any pending but unresolved claims in their notice of appeal. *See* Ark. R. App. P.–Civ. 3(e)(vi) (2015).

[2]During this case, Attorney General Dustin McDaniel was replaced by our current attorney general, Leslie Rutledge.

*Cross-Appeal: Is this a proper declaratory judgment action?*

Peer review is a process for monitoring quality and improving care within a healthcare institution. *See* Ark. Code Ann. § 20-9-1302(a)(1). It was addressed by Congress in 1986 with the passage of the Health Care Quality Improvement Act (HCQIA), codified at 42 U.S.C. §§ 11101 et seq. Generally speaking, HCQIA provides immunity from liability for civil damages for those who participate in a professional-review action and meet the standards set forth in HCQIA (regarding the purpose of the action, notice and hearing, and procedures). *See* 42 U.S.C. § 11111. In 2013, our General Assembly passed the Act, codified at Ark. Code Ann. §§ 20-9-1301 to -1308. Arkansas Code Annotated section 20-9-1302 provides as follows:

> (a) The General Assembly finds that:
> (1) The peer review process is well established as the most important and effective means of monitoring quality and improving care within an institution;
> (2)(A) Peer review is essential to preserving the highest standards of medical practice.
> (B) However, peer review that is not conducted fairly results in harm to both patients and physicians by limiting access to care and patient choice; and
> (3) It is necessary to balance carefully the rights of patients who benefit by peer review with the rights of those who may be harmed by improper peer review.
> (b) The General Assembly intends that peer review be conducted fairly for the benefit of the citizens of the State of Arkansas.

The Act provides that "[p]rofessional review activity shall be conducted and professional review actions shall be taken in compliance with the requirements of the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 et seq., and the additional requirements of [the Act]." Ark. Code Ann. § 20-9-1304(a).

The defendants/cross-appellants argue that they are improper parties to this suit and that the Hospitals do not have standing to obtain declaratory relief. With regard to obtaining declaratory relief, the defendants argue that there is no justiciable controversy, there is no

actual controversy between adverse parties, and the issues are not ripe. Because the arguments under these two points overlap, we address them together.

Our declaratory-judgment statute provides that "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute. . . and obtain a declaration of rights, status, or other legal relations thereunder." Ark. Code Ann. § 16-111-104 (Repl. 2006). While this section recognizes a party's right to a declaratory judgment, a justiciable controversy is required. *McGhee v. Arkansas State Bd. of Collection Agencies*, 375 Ark. 52, 57–58, 289 S.W.3d 18, 23 (2008). Declaratory relief will lie where: (1) there is a justiciable controversy; (2) it exists between parties with adverse interests; (3) those seeking relief have a legal interest in the controversy; and (4) the issues involved are ripe for decision. *Id.* On appeal, the question of whether there was a complete absence of a justiciable issue shall be reviewed de novo on the record of the circuit court. *Id.*

Here, the defendants argue that there is no justiciable controversy because there is no present danger or dilemma, citing the Hospitals' references throughout their brief to hypothetical future events. Indeed, the Hospitals do not state that they are violating the Act, and they have not alleged a threat of imminent enforcement under the Act. A declaratory judgment "does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain." *McLane S., Inc. v. Arkansas Tobacco Control Bd.*, 2010 Ark. 498, at 28–29, 375 S.W.3d 628, 647. Similarly, we have stated that

> [t]he Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain.

*McCutchen v. City of Fort Smith*, 2012 Ark. 452, at 15, 425 S.W.3d 671, 681 (quoting *Cummings v. City of Fayetteville*, 294 Ark. 151, 154–55, 741 S.W.2d 638, 639–40 (1987)). Here, the Hospitals argue that the Act imposes a present and ongoing injury to them in that it creates new standards with which they must comply during the peer-review process. We disagree that a justiciable controversy has been presented for our review. *See Jegley v. Picado*, 349 Ark. 600, 622, 80 S.W.3d 332, 343 (2002) (finding a justiciable controversy regarding constitutionality of the sodomy statute where the plaintiffs admitted to violating the statute and the actions of state prosecutors in declining to prosecute " could effectively bar shut the courthouse doors and protect the sodomy statute from constitutional challenge"). After carefully considering the parties' arguments on this point, we conclude that the requirement of a justiciable controversy is not present in this case.

In sum, appellants ask this court to determine whether the Act, which presents an entire statutory scheme, is unconstitutional without any present controversy to examine. The only evidence before the circuit court on the cross-motions for summary judgment was an affidavit of the Director of the Department of Health and a portion of the Hospitals' responses to appellees' first set of requests for admissions. Without a sufficient factual record to show an actual, present controversy, this court cannot opine on the merits of the constitutional arguments raised in the Hospitals' declaratory-judgment suit. Because a justiciable controversy is a necessary element of a declaratory-judgment suit and that element is lacking in this case, it is unnecessary to address the other requirements for obtaining declaratory relief. Similarly, we do not reach the issues presented on direct appeal.

Reversed on cross-appeal; direct appeal dismissed.

DANIELSON and WOOD, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** I respectfully dissent. I disagree with the majority's holding that this is not a proper declaratory-judgment action. Declaratory judgments are used to determine the rights and liabilities of respective parties. *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762 (citing *Stilley v. James*, 345 Ark. 362, 48 S.W.3d 521 (2001)). The purpose of the declaratory-judgment statutory scheme "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Nelson*, 2011 Ark. 491, at 11, 385 S.W.3d at 769 (quoting Ark. Code Ann. § 16-111-102 (Repl. 2006)).

In order to obtain declaratory relief, the requisite precedent facts or conditions generally held to be required are as follows:

> (1) [A] justiciable controversy, that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

*Nelson*, 2011 Ark. at 11, 385 S.W.3d at 769 (quoting *MacSteel Div. of Quanex v. Ark. Okla. Gas Corp.*, 363 Ark. 22, 35, 210 S.W.3d 878, 886 (2005)).

The majority holds that there is no justiciable controversy, and therefore, this case does not meet the first requirement for a declaratory-judgment action. After this determination, the majority finds it unnecessary to discuss the three remaining requirements. I would hold that all of the requirements for a declaratory-judgment action have been met.

First, I do not agree that there is no justiciable controversy in this case. There is clearly a present and ongoing injury to the Hospitals in that the Arkansas Peer Review Fairness Act (the "Act") creates new standards with which the Hospitals must comply during the peer-review process. The prejudice to the Hospitals' position is "actual and genuine and not merely possible, speculative, contingent, or remote." *Jegley v. Picado*, 349 Ark. 600, 618, 80 S.W.3d 332, 340 (2002) (quoting *Cummings v. City of Fayetteville*, 294 Ark. 151, 155, 741 S.W.2d 638, 640 (1987)). Because a justiciable controversy exists, I would address the remaining requirements for a declaratory-judgment action.

The Hospitals have a legal interest in this controversy because, if the Act is constitutional, then they could be subject to liability by failing to comply. Conversely, if the Act is unconstitutional, they are being forced to comply with unconstitutional law. The Arkansas Attorney General has an adverse legal interest in defending the constitutionality of the State's statutes. The Arkansas Department of Health and Dr. Smith have an interest pursuant to the authority granted to the Department and its Director to promulgate rules and regulations applying to hospitals. Finally, the issues are ripe for judicial determination because they are based on present and ongoing injuries to the Hospitals, and not future, hypothetical events.

Because this case is a proper declaratory-judgment action, I would reach the issues presented on direct appeal.

**RHONDA K. WOOD, Justice, dissenting.** This case presents a live, justiciable controversy, and I would reach the merits of the hospitals' appeal. One purpose of a declaratory-judgment action is for a party to seek a declaration of its rights before waiting

to be sued. These actions eliminate legal uncertainty and promote efficiency. But under the majority's view, the hospitals must wait to be sued before they can know their rights under the Peer Review Fairness Act. This result subverts the purpose of the declaratory-judgment action, something that for all practical purposes the hospitals cannot enjoy. I respectfully dissent.

The Peer Review Fairness Act imposes a number of duties on hospitals regarding the physician-credentialing process. The duties attach once a "professional review activity" begins. A professional review activity includes "investigations," which are defined as "a process conducted by a professional review body to obtain facts related to a concern or complaint about a physician in order to determine whether a professional review action should be requested or recommended." Ark. Code Ann. § 20-9-1303(4), (7) (Repl. 2014). Any time a "professional review activity" or "investigation" begins, a hospital must give notice to the doctor, include the doctor's attorney in the fact-finding process, provide exculpatory information, and allow the doctor to lobby the peer review body. Ark. Code Ann. § 20-9-1304. Should the hospitals fail to comply with their duties, a doctor could sue for an injunction and attorney's fees. Ark. Code Ann. § 20-9-1307(a), (b). Thus, the hospitals' obligations arise in the ordinary course of business: anytime someone complains about a doctor—and the hospital seeks to find facts—a whole host of obligations arises. The hospitals need to know what the law requires them to do or whether the law, or portions of it, is unconstitutional. For this reason, this action is tailor-made for a declaratory judgment.

One type of declaratory-judgment action allows "a person threatened with liability or uncertain of his or her rights and obligations [to] seek[] a judicial determination of the issue rather than waiting to be sued." David Newbern et al., *Arkansas Civil Practice and Procedure* § 36:1 (5th ed. 2010). A declaratory judgment is especially appropriate in disputes between private citizens and public officials about the meaning of the constitution or of statutes. *McDonald v. Bowen*, 250 Ark. 1049, 1051, 468 S.W.2d 765, 767 (1971). In this way, some citizens have brought suit against the State and have requested that the court declare certain laws unconstitutional. *See, e.g.*, *McGee v. Ark. State Bd. of Collection Agencies*, 375 Ark. 52, 289 S.W.3d 18 (2008) (Check-Cashers Act); *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002) (anti-sodomy statute).

*Jegley* is a central case on standing to bring a declaratory judgment. There, plaintiffs brought a declaratory-judgment action against the State, through the prosecuting attorney, and requested that the court declare the anti-sodomy statute unconstitutional. *Jegley*, 349 Ark at. 608, 80 S.W.3d at 334. In response, the State argued that no justiciable controversy existed because the plaintiffs had not been threatened with prosecution under the statute, which in any event had lain dormant for fifty years. *Id.* at 611–12, 80 S.W.3d at 336–37. We found that a justiciable controversy existed, however, because plaintiffs "intend[ed] to engage in future behavior that violates the law and . . . the State has not disavowed any intention of invoking the criminal-penalty provisions of [the law]." *Id.* at 622, 80 S.W.3d at 343.

Like the plaintiffs in *Jegley*, the hospitals are presently engaged in conduct regulated by statute. Without question, complaints are filed routinely against doctors—in response,

the hospital conducts fact-finding. Such an event likely triggers the hospitals' duties under the Act. And unlike *Jegley*, where the justiciability question was close due to the statute's dormancy, this Act and its federal counterpart are often invoked; indeed, an entire regulatory apparatus exists on both the state and federal level regarding the issue of peer review. *See generally* Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101-11152. It's neither theoretical nor hypothetical that peer-review activity does and will continue to take place. One study estimates that around 1000 peer-review actions were reported to a national database annually between 2002 and 2005. *See* Eleanor D. Kinney, *Hospital Peer Review of Physicians: Does Statutory Immunity Increase Risk of Unwarranted Professional Injury?*, 13 Mich. St. U. J. Med. & L. 57, 79 (2009). Plainly, before a "peer review action" or negative credentialing recommendation takes place, there must be a "peer review activity" or investigation. So if there are 1000 "peer review actions" per year, then it's safe to assume that there are many more "peer review activities."

This observation leads to another point: the majority claims that the hospitals provided no evidence that a present controversy exists. But a central claim of the hospitals' complaint was that they don't know exactly what event triggers their duties under the statute. Presumably, under the Act, the hospitals' duties attach once an investigation begins. But the hospitals assert that the statute's definition of investigation is so broad, and covers such ordinary and routine procedures,[3] that the definition is unconstitutionally vague. In

___

[3] "All hospitals have quality-assurance policies in place. Under such policies, hospital personnel review files and records following a complaint or medical accident, even if no wrongdoing has occurred on the part of a physician. . . . As codified, the Act can be read to treat such quality-assurance procedures and informal talks as "investigations," thus triggering

other words, a controversy exists about when a controversy arises. The hospitals sufficiently pled this in their complaint, and they had no obligation to present additional evidence to establish a justiciable controversy on this question of law.

Finally, the fact that the hospitals sued the State rather than an individual physician should not prevent this lawsuit from going forward for lack of an adverse party. The adverse-party requirement ensures that both sides of an argument are presented to the court. *See, e.g., Mastin v. Mastin*, 316 Ark. 327, 330, 871 S.W.2d 585, 587 (1994) (finding no justiciable controversy "in a one-brief case where the matter has not been fully argued or even contested"); *UHS of Ark., Inc. v. City of Sherwood*, 296 Ark. 97, 101, 752 S.W.2d 36, 38 (1988) (finding no justiciable controversy when the State, in its answer, admitted that the plaintiff was entitled to relief); *see also Baker v. Carr*, 369 U.S. 186, 204 (1962) (explaining that "the gist of the question of standing" is whether a plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions"). The State, via the attorney general, has robustly defended this Act both below and on appeal. We have the benefit of two well-briefed, adverse arguments as well as amicus curiae briefs. We should answer the squarely presented questions.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Megan D. Hargraves*, for appellants.

*Leslie Rutledge*, Att'y Gen., by: *Bourgon B. Reynolds*, Ass't Att'y Gen., for appellees.

---

specific notification and disclosure requirements." Brief for Arkansas Hospital Association as *Amicus Curiae* 8.



*Mitchell, Blackstock, Ivers, Sneddon & Marshall, PLLC*, by: *Emily Sneddon* and *Michael W. Mitchell*, amicus curiae in support of appellees.

*Elisa White*, Vice President and General Counsel, Arkansas Hospital Association, amicus curiae in support of appellants.