## Gordon L. CUMMINGS *v.* CITY OF FAYETTEVILLE, Arkansas

87-234                                                         741 S.W.2d 638

Supreme Court of Arkansas
Opinion delivered December 21, 1987

*Gordon L. Cummings*, for appellant.

*James N. McCord*, City Att'y, for appellee.

DARRELL HICKMAN, Justice. Gordon Cummings, a Fayetteville lawyer, filed a suit for a declaratory judgment naming the City of Fayetteville as the interested party. The suit was to declare Ark. Stat. Ann. § 19-718 (Repl. 1980), which governs the recall of city directors, unconstitutional as a violation of the police powers of the state and Amendment 7 to the Arkansas Constitution. The attorney general was notified of the lawsuit pursuant to Ark. Stat. Ann. § 34-2510 (Repl. 1962), but declined to intervene. We affirm because we find no controversy; the appellant is simply asking for a legal opinion.

Cummings alleged that he had prepared a recall petition against three directors of the City of Fayetteville, but that to obtain a recall election, he would have to have 8,616 signatures, 26 signatures more than people who voted in the election and actually 42 % of the registered voters. Attached to the complaint is a blank petition for recall, stating that the undersigned, qualified voters of Fayetteville seek the recall and removal of Jeremy Hess, Marilyn Johnson, and Ernest Lancaster from the city board of directors. No signatures were obtained, and no allegation is made that any attempt was made to obtain any signatures. Furthermore, there was no allegation that any or all of the directors had held office for more than six months, which is required by Ark. Stat. Ann. § 19-718, before a director can be subject to recall.

None of the directors named in the blank petition were made parties to the suit, although they were ostensibly the target of Cummings' action and clearly have interests paramount to that of the city. Actually, Cummings did not specifically allege that he wanted to recall the directors. The complaint simply states that the statute should be declared unconstitutional. No pleading states that anyone wants these directors removed. We cannot manufacture facts.

The City of Fayetteville answered and the parties stipulated to the number of registered voters within the city, which is 20,292, and to the votes at the last election, which were determined to be:

Ward 1, Position 1:

| | | |
|---|---|---|
| Ernest E. Lancaster | votes received | 5,215 |
| Joe Gaspard | votes received | 2,990 |
| Total votes cast for Position 1 | | 8,214 |

Ward 2, Position 2:

| | | |
|---|---|---|
| Bill Martin | votes received | 4,906 |
| Mort Gitelman | votes received | 2,651 |
| Marlene Ray | votes received | 1,014 |
| Total votes cast for Position 2 | | 8,571 |

Ward 3, Position 3:

| | | |
|---|---|---|
| Russ Kelley | votes received | 5,190 |
| Bill Isaacs | votes received | 2,649 |
| | | 7,839 |

Total votes cast for all candidates for directors—24,615.

The trial judge granted the city's motion for summary judgment. Cummings brings this appeal but does not challenge the court's determination that Amendment 7 is not violated by the statute. His single point on appeal is that the trial court was wrong in finding that the statute was not arbitrary and in violation of the police powers of the Arkansas Constitution.

It is our judgment that Cummings actually seeks a legal opinion from us rather than the resolution of a controversy. In *Andres* v. *First Arkansas Development Finance Corp.*, 230 Ark. 594, 324 S.W.2d 97 (1959), citing Anderson, *Anderson on Declaratory Judgments* § 187 (2d ed. 1951), we adopted certain requirements precedent to a declaratory judgment, which follow:

1. there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it;

2. the controversy must be between persons whose interests are adverse;

3. the party seeking declaratory relief must have a legal interest in the controversy; in other words a legally protectable interest; and

4. the issue involved in the controversy must be ripe for judicial determination.

No attempt was made in this case to obtain a single signature. While it may be that 8,000 signatures is a large number to obtain, by no means is it impossible. It might not even be difficult, depending upon who and how many persons seek the action sought in the petition. Indeed, Cummings did not address below what would happen to his "recall" if he prevailed. Undoubtedly, the result would be that no recall could be made of a city director. So, we question whether he has established he has a case.

In Cummings' complaint, he states he wants the court to declare the statute unconstitutional. In his brief he argues to us that the statute should be declared unconstitutional "and the legislature required to either provide no recall petition provisions or to pass a new recall petition signature requirement that is reasonable in number." Of course, we have no power to direct the legislature to pass any law. The appellant's brief, while referring to several states which have recall laws, fails to discuss the power of the state to regulate elections, and how this power may differ in regard to ordinary elections and the recall of public officials. Obviously, a state can place some extra burdens on those who seek to recall duly elected officials during their terms of office.

■ This is an issue of public interest that deserves the participation of the parties whose interests are directly at stake. They have reason to make convincing arguments. We do not have to consider arguments on appeal that are unsupported by convincing authority, unless it is apparent without further research that they are well taken. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

■ The appellant makes several theoretical arguments. For example, he argues that if all registered voters participated in the election of the three directors, the signatures of 105% of the registered voters would be required to effect a recall election. In *Andres* v. *First Arkansas Development Finance Corp., supra*, we quoted further from Anderson, *Anderson on Declaratory Judgments* § 187 (2d ed. 1951), as follows:

> The Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to

decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote.

The statute in question may be ridiculous in some instances and easily subject to challenge. A lot of laws may fall in that category, but we review them in a lawsuit. We conclude that the appellant has demonstrated he has an argument with the legislature, but not one that amounts yet to a case or controversy that we should decide.

Therefore, the judgment is dismissed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I dissent primarily to point out the absurdity of Ark. Stat. Ann. § 19-718 (Repl. 1980). In my opinion the drafter of § 19-718 either slipped up or had an unusual sense of humor. Section 19-718 provides for the removal of a city director by first requiring that a petition demanding the election of a successor be signed by thirty-five percent of the number of ballots cast for all the candidates for directors at the preceding primary election.

It seems to me that § 19-718 meant to require thirty-five percent of the voters at the last primary election to sign a petition before a recall election could be held because thirty-five percent of the total number of ballots cast might be impossible. For example, if a city had one thousand voters and they all voted for five different positions in the last election, the total votes cast would be 5,000. Thirty-five percent would equal 1,750 signatures. Under such circumstances it would be impossible for a recall petition to succeed.

In the present case the § 19-718 petition requirement is not impossible, but it does require more signatures on the recall petition than there were voters in the preceding election. The highest total of votes in the city directors race was 8,571 for position two. This constituted the greatest number of voters in the entire election. The total number of ballots cast in the entire

election for position one, two, and three was 24,624. Thirty-five percent of the total votes equals 8,616, which is forty-five more votes than the total electors voting in the election and at least 3,400 more votes than was received by either of the city directors.

This is a clear demonstration that the requirement that signatures for a recall vote shall equal at least thirty-five percent of the total votes cast in the city director's election is arbitrary, capricious, and not consistent with a democratic form of government. The statute discourages and even prevents the citizens from exercising their rights to control their government.

In my opinion the General Assembly should correct this obvious inequity of the law. Thirty-five percent of the highest votes cast in the previous election for any one position for the board of directors, as is required in Ark. Stat. Ann. § 19-717 (Repl. 1980) to initiate a petition to refer an ordinance to a popular vote, is a more reasonable and just requirement.