2010 Ark. 498

McLANE SOUTHERN, INC., Appellant

v.

ARKANSAS TOBACCO CONTROL
BOARD, Appellee.

No. 10–498.

Supreme Court of Arkansas.

Dec. 16, 2010.

Williams & Anderson PLC, Little Rock, by: Peter Kumpe and Stephen A. Hester, and Griffin & Block, PLLC, Little Rock, by: Clifford P. Block, for appellant.

Dustin McDaniel, Att'y Gen., by: Mark N. Ohrenberger, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice.

Appellant McLane Southern, Inc., appeals from the circuit court's order affirming certain opinions of appellee Arkansas Tobacco Control Board ("the Board") and denying McLane declaratory relief. McLane urges eight points on appeal,[1] specifically, that (1) the Board's Opinion 2007-003 regarding patronage dividends was arbitrary and capricious; (2) the circuit court erred in refusing to grant declaratory relief on its claim that patronage dividends constituted rebates under the Arkansas Unfair Cigarette Sales Act ("the Act"), Arkansas Code Annotated §§ 4-75-701 to -714 (Repl.2001 & Supp.2009); (3) the Board's decision precluding price matching based on patronage dividends was arbitrary and capricious; (4) the circuit court's refusal to grant declaratory relief on its price-matching claim should be reversed; (5) the circuit court's ruling regarding the constitutionality of the Board's interpretations relating to patronage dividends and price matching should be reversed; (6) the Board's decision in Opinion 2007-004 that the provision of free handheld devices and free shelf-stocking services constituted concessions was arbitrary and capricious; (7) the circuit court erred in finding that McLane lacked standing to seek declaratory relief relating to Opinion 2007-004 of the Board; and (8) the circuit court erred in finding that McLane lacked standing to seek declaratory relief relating to the Board's Opinion 2007-001. We affirm in part and reverse in part the opinions of the Board, and we affirm the circuit court's order.

The relevant facts are these. On August 4, 2005, McLane, an Arkansas-licensed wholesaler of tobacco products, requested certain advisory opinions from the Board, as permitted by 175-00-001 Ark. Code R. § 16 (Weil 2008). In response to those requests, the Board issued four separate opinions on December 12, 2005.

In response to Opinion Request No. 3, the Board advised, in pertinent part:[2]

You posed the following question:

"A cigarette wholesaler that is organized as a cooperative under the laws of the State of Arkansas, or similar statutes of another state, in addition to and separate from any stock dividends, returns to its membership, via patronage dividends, a certain amount of the net profits of the cooperative, prorated to the members based upon the volume of their purchases from the cooperative. Does a return of part of the price of cigarettes to a member of a cooperative, through such patronage dividends, reflected as a prorated share of profit of the cooperative, constitute a 'rebate in price or concession of any kind in connection with the sale of cigarettes' as contemplated by the Unfair Cigarette Sales Act, Ark. Code Ann. § 4-75-708, or the Rules and Regulations of the Tobacco Control Board? If McLane were to form a simi-

---

1. While McLane's brief sets forth two points on appeal, it appears, after reading the entirety of its argument, that the argument is more accurately and efficiently addressed by separating the points into eight separate points on appeal.

2. The opinions are set out as organized by McLane in both its brief on appeal and its petition before the circuit court.

lar arrangement with its customers so as to return a part of the price of cigarettes to its customers, reflecting a prorated share of profit on the sale of cigarettes, would such a return of part of the price of cigarettes constitute a rebate in price or concession of any kind in connection with the sale of cigarettes as contemplated by the Unfair Cigarette Sales Act, Ark.Code Ann. § 4–75–708, or the Rules and Regulations of the Tobacco Control Board?"

The Board does not consider the annual patronage dividend paid by the cooperative to be a rebate or concession prohibited by the Unfair Cigarette Sales Act. The cooperative is required to pay such dividends under Federal Tax regulations. It is unlikely that a retailer would go to the considerable expense of becoming a member of the cooperative just to receive a patronage dividend. It would be extremely difficult to show that the patronage dividend under these circumstances was paid with predatory intent to injure competition.

If McLane were to reorganize as a cooperative under the tax laws, they would most likely be allowed to offer patronage dividends.

In response to Opinion Request No. 2, the Board advised, in pertinent part:

You pose the following question:

"Certain cigarette wholesalers that are organized as cooperatives, such as Affiliated Foods Southwest, Inc., in addition to and separate from any stock dividends, provide patronage dividends to members reflecting a return of proceeds paid for goods purchased, including cigarettes. When a cooperative provides such a patronage dividend in connection with the purchase of cigarettes, may McLane meet the price of this competing cooperative by matching the cooperative's price of cigarettes, calculating the cooperative's price of cigarettes as invoice price less the patronage dividend return applicable to the sale of cigarettes?"

The Board does not consider the annual patronage dividend paid by the cooperative to be a rebate or concession prohibited by the Unfair Cigarette Sales Act. The cooperative is required to pay such dividends under Federal Tax regulations. It is unlikely that a retailer would go to the considerable expense of becoming a member of the cooperative just to receive a patronage dividend. It would be extremely difficult to show that the patronage dividend under these circumstances was paid with predatory intent to injure competition.

Since the Board does not treat the patronage dividend as a rebate or concession that reduces the basic cost of cigarettes to the retailer, McLane cannot reduce its price to its retailers to match the invoice price at which the cooperative sells the cigarettes less the patronage dividend return applicable to the sale of cigarettes. This answer is bolstered by the fact that every retailer serviced by the cooperative will receive a different patronage dividend reflecting its sales mix and volume.

In response to Opinion Request No. 4, the Board advised, in pertinent part:

You pose the following questions:

1. If a cigarette wholesaler provides at no cost to its customers a handheld order entry system (i.e., handheld computer, MSI, Telxon machine, etc.) or other similar device to facilitate the ordering of products including cigarettes, would the providing of these types of devices constitute a "concession of any kind or nature whatsoever in connection with the sale of cigarettes" as contemplated by the Unfair Cigarette Sales Act, Ark.Code Ann. § 4–75–708 and the

Rules and Regulations of the Tobacco Control Board?

2. For a second scenario related to the one above, if a cigarette wholesaler provides at no cost to its customers shelf stocking services, services of conducting inventory of cigarettes or similar product handling services, would the providing of these types of services constitute a "concession of any kind or nature whatsoever in connection with the sale of cigarettes" as contemplated by the Unfair Cigarette Sales Act, Ark.Code Ann. § 4–75–708 and the Rules and Regulations of the Tobacco Control Board?

The Board does not consider the provision of a handheld order entry system to be a concession or rebate under Regulation No. 9. Based upon our understanding of the retail marketing, such devices are used for all goods provided by wholesalers to the retailer. The cost savings to the retailer by having the device is not likely to be a major factor in determining whether a retailer selects one wholesaler over another. Furthermore, providing this device is not evidence of intent to injure competition.

The same answer applies to your question regarding shelf stocking or conducting inventories.

In response to Opinion Request No. 1, the Board advised, in pertinent part:

[Y]ou pose this question:

"Under the provisions of the Unfair Cigarette Sales Act which allows retailers to meet the price of competitors, Ark.Code Ann. § 4–75–704, ... May a retailer that is located outside of the border zone (i.e., 301 feet from a state line or just outside the city limits of any Arkansas city which adjoins a state line) advertise, offer to sell, or sell cigarettes at a price made in good faith to meet the price of its competitor that is located within the border zone? You may assume for this request that the competing retailers are proximately located close enough to each other to truly be competitors."

It is my opinion that the meeting lawful competition section does not apply in this scenario. If the neighboring retailer can lower his price to meet the price of the competitor in the border zone, then his competitor located still further away from the border can likewise do the same. Ultimately, the price at which cigarettes can be sold in Arkansas would be set by the price at which cigarettes can be lawfully sold in border cities. This cannot have been the legislature's intent.

The border zone tax rates were adopted to reduce problems for retailers located near a state border. Furthermore, the basic cost of the cigarettes purchased by the retailer in the border zone [is] less than the basic cost of cigarettes that are purchased by retailers outside of the border zone.

Upon receiving the opinions of the Board, McLane filed a petition in the Pulaski County Circuit Court, seeking judicial review of the Board's opinions pursuant to the Arkansas Administrative Procedure Act, Ark.Code Ann. §§ 25–15–201 to –219 (Repl.2002 & Supp.2009), and declaratory relief. During the course of the litigation, however, the Board withdrew its prior opinions and issued four new opinions. In Opinion 2007–003, the Board stated:

On August 4, 2005, you requested an opinion on whether or not a cigarette wholesaler that is organized as a cooperative under the laws of the State of Arkansas, or similar statutes of another state, in addition to and separate from any stock dividends, returns to its membership, via patronage dividends, a certain amount of the net profits of the

cooperative, prorated to the members based upon the volume of their purchases from the cooperative constitute a "rebate in price or concession of any kind in connection with the sale of cigarettes" as contemplated by A.C.A. § 4–75–708 or the Rules and Regulations of the Tobacco Control Board. You additionally asked if McLane were to form a similar arrangement with its customers so as to return a part of the price of cigarettes to its customers, reflecting a prorated share of profit on the sale of cigarettes, would such a return of part of the price of cigarettes constitute a rebate or concession of any kind in connection with the sale of cigarettes as contemplated by A.C.A. § 4–75–708 or the Rules and Regulations of the Tobacco Control Board. On December 12, 2005, then Director Charlie Davis submitted a response to your request for opinion that was adopted by the Arkansas Tobacco Control Board at its regular hearing on that date. Subsequently, on June 7, 2007, the Board voted to withdraw the December 12, 2005 opinion. The following opinion readdresses your August 4, 2005 request.

RESPONSE:

A.C.A. § 4–75–702(2) states this definition, " 'Buying pool' means and includes any combination, corporation, association, affiliation, or group of retail dealers operating jointly in the purchase, sale, exchange, or barter of cigarettes, the profits of which accrue directly or indirectly to the retail dealers";

A.C.A. § 4–75–702(12)(A) states this definition for a "Wholesaler," "Any person other than a buying pool as defined in subdivision (2) of this section, wherever resident or located, who brings or causes to be brought into this state unstamped cigarettes purchased directly from the manufacturer thereof and who maintains an established place of business where substantially all of the business is the sale of cigarettes and related merchandise at wholesale to cigarette licensees and where at all times a substantial stock of cigarettes and related merchandise is available for resale, if seventy-five percent (75%) thereof are sold to retailers or other wholesalers not connected with the wholesaler by reason of any business connection or otherwise";

A.C.A. § 26–57–203(12)(A) defines "Wholesaler" to mean, " . . . any person, not a manufacturer or owned or operated by a manufacturer, that does business within this state at or from an established place of business that purchases unstamped or untaxed cigarettes or other tobacco products directly from manufacturers that distribute tobacco products in Arkansas, and that sells to properly licensed cigarette vendors or retailers."

In my opinion, a cooperative acting as you described would be licensed as a wholesaler under § 26–57–201 et seq., however, for purposes of A.C.A. § 4–75–101 et seq., a cooperative, even though licensed as a wholesaler, would instead be considered a "Buying Pool" and as such, its patronage dividend would not be considered a rebate or concession under A.C.A. § 4–75–708 but instead fall under the buying pool's direct or indirect accrual of profits. The rationale for this opinion is that the Arkansas Legislature, when the Unfair Cigarette Sales Act was first passed in 1951 was fully cognizant of the existence of organizations that were created under what is now A.C.A. § 4–30–101 et seq. and since it specifically excluded buying pools from the Unfair Cigarette Sales Act's definition of a wholesaler, it is my opinion that this was done to allow the sharing of profits as described in A.C.A. § 4–75–702(2) in the form of patronage divi-

dends. As to the Arkansas Tobacco Control Board's Rules and Regulations, in my opinion, if a buying pool is not considered to be giving a rebate or concession under statute when it shares profits amongst its members, then it certainly cannot be said to be in violation of Rules & Regulations by doing the same. A similar question is addressed in Nevada Attorney General's Opinion 1991–10 and to the extent it bears a resemblance to Arkansas law, I incorporate it by reference.

In my opinion, were McLane to form a similar arrangement with its customers so as to return a part of the price of cigarettes to its customers, reflecting a prorated share of profit on the sale of cigarettes, so long as it reorganized itself under A.C.A. § 4–30–101 et seq. into a recognized cooperative, thereby putting itself under the definition of a "buying pool," then it would not be in violation of the Unfair Cigarette Sales Act.

In Opinion 2007–002, the Board opined: I am writing to readdress your request for an advisory opinion on the following question:

"Certain cigarette wholesalers that are organized as cooperatives, such as Affiliated Foods Southwest, Inc., in addition to and separate from any stock dividends, provide patronage dividends to members reflecting a return of proceeds paid for goods purchased, including cigarettes. When a cooperative provides such a patronage dividend in connection with the purchase of cigarettes, may McLane meet the price of this competing cooperative by matching the cooperative's price of cigarettes, calculating the cooperative's price of cigarettes as invoice price less the patronage dividend return applicable to the sale of cigarettes?"

RESPONSE:

Ark.Code Ann. § 4–75–704, allows a wholesaler to meet its competitor's price. That section provides:

4–75–704 Transactions permitted to meet lawful competition.

(a)(1) Any wholesaler may advertise, offer to sell, or sell cigarettes at a price made in good faith to meet the price of a competitor who is rendering the same type of service ⌊₈and is selling the same article at cost to the competing wholesaler as defined by this subchapter.

The Director interprets this section to apply to the cost charged to the retailer at the time of delivery as reflected on the wholesaler's invoice or on contemporaneous payment documentation. The Director does not consider later payments or concessions, whether or not legal, to reduce the sales price of the cigarettes for purposes of meeting competition. The amount of the future patronage dividend is unknown at the time of the delivery of the cigarettes and will not be the same for every retailer. Each retailer serviced by the cooperative will apparently receive an individualized patronage dividend reflecting its respective sales mix and volume.

Thus, McLane can not reduce its price to its retailers to match the invoice price at which the cooperative sells the cigarettes less the patronage dividend return applicable to the sale of cigarettes.

In Opinion 2007–004, the Board stated: I am writing to readdress your request for an advisory opinion on the following questions:

1. If a cigarette wholesaler provides at no cost to its customers a handheld order entry system (i.e., handheld computer, MSI, Telxon machine, etc.) or other similar device to facilitate the ordering of products including cigarettes, would the providing of these types of devices

constitute a "concession of any kind or nature whatsoever in connection with the sale of cigarettes" as contemplated by the Unfair Cigarette Sales Act, Ark. Code Ann. § 4–75–708 and the Rules and Regulations of the Tobacco Control Board?

2. For a second scenario related to the one above, if a cigarette wholesaler provides at no cost to its customers shelf stocking services, services of conducting inventory of cigarettes or similar product handling services, would the providing of these types of services constitute a "concession of any kind or nature whatsoever in connection with the sale of cigarettes" as contemplated by the Unfair Cigarette Sales Act, Ark.Code Ann. § 4–75–708 and the Rules and Regulations of the Tobacco Control Board?

RESPONSE:

It is my understanding that the usage of the handheld order entry devices is commonplace in the market place and that in most cases the retailer purchases or leases the device. I also understand that some wholesalers provide shelf stocking and inventory services for an additional charge. However, I am not aware of any situation where devices or services are provided by a wholesaler at no charge to the retailer.

In my judgment providing the devices and services at no charge as described in your question constitutes a concession under the UCSA and Board Regulations. However, providing concessions in connection with the sale of cigarettes is only prohibited by the UCSA if there is intent to injure competition. Whether such intent exists would require a case by case factual determination. The Attorney General said in Opinion No.1999–229: "I must emphasize (as was emphasized in Opinion No.1998–226) that the question of whether any particular transaction is in violation of the Unfair Cigarette Sales Act is largely a question of fact and will turn on the specifics of that transaction."

While providing the devices and services described might support a private cause of action under Ark.Code Ann. § 4–75–713, the Director does not intend to initiate enforcement action in either scenario presented in your question.

Finally, Opinion 2007–001 provided:

On August 4, 2005, you requested an opinion on whether or not a retailer that is located outside of a 'border zone' may advertise, offer to sell, or sell cigarettes at a price made in good faith to meet the price of its competitor that is located within the 'border zone' and that for the purpose of your opinion request, the two retailers should be considered to be in close enough proximity that they truly compete against each other. On December 12, 2005, then Director Charlie Davis submitted a response to your request for opinion that was adopted by the Arkansas Tobacco Control Board at its regular hearing on that date. Subsequently, on June 7, 2007, the Board voted to withdraw the December 12, 2005 opinion. The following opinion readdresses your August 4, 2005 request.

RESPONSE:

A.C.A. § 4–75–704(a)(2) states that "Any retailer may advertise, offer to sell, or sell cigarettes at a price made in good faith to meet the price of a competitor who is selling the same article at cost to the competing retailer as defined in this subchapter." There is no exception to this provision for areas designated as reduced cigarette excise taxes on the state's borders.

In my opinion, given the above-quoted statutory language and absent any exception to same, the answer to your

question is yes, a retailer who is not located within a designated reduced cigarette excise tax area ("Border Zone") may, in good faith, meet the price of his competitor who is located inside a "Border Zone."

Accordingly, McLane amended its petition before the circuit court.

In its amended petition, McLane asserted seven counts, which included the following allegations: (1) that the Board's opinion finding that patronage dividends did not constitute rebates or concessions was arbitrary and capricious; (2) that McLane was entitled to a declaration that the Board's opinion that patronage dividends did not constitute rebates was arbitrary and capricious; or, alternatively, that it was entitled to a declaration that the antirebating provision of the Act was special legislation; (3) that the Board's decision that patronage dividends may not be considered when meeting competition, that meeting competition was limited to the cost charged the retailer at the time of delivery, and that McLane may not match the net price of cigarettes of a cooperative was arbitrary and capricious; (4) that McLane was entitled to a declaration that the Board's opinion that patronage dividends may not be considered when meeting competition, that meeting competition is limited to the cost charged the retailer at the time of delivery, and that McLane may not match the net price of cigarettes of a cooperative was arbitrary and capricious; (5) that McLane was further entitled to a declaration that it may meet the net price of a cooperative invoice less patronage dividend; (6) that the Board's opinion that patronage dividends may not be considered when meeting competition, that meeting competition is limited to the cost charged the retailer at the time of delivery, and that McLane may not match the net price of cigarettes of a cooperative resulted in the Act arbitrarily separating cooperatives from other wholesalers with no reasonable relation, thereby constituting special legislation; or, alternatively, that McLane was entitled to a declaration that the Act in its entirety was special legislation as applied to all wholesalers; (7) that the Board's opinion that the provision of free order-entry systems and free shelf stocking, while constituting rebates, would not be subject to enforcement rendered the provisions regarding concessions unconstitutionally vague and was arbitrary and capricious; (8) that McLane was entitled to a declaration that section 9 of the Board's rules and regulations and Ark.Code Ann. § 4–75–708 were void for vagueness; (9) that McLane was entitled to a declaration that the Board's initial opinion responding to Opinion Request No. 1 that Ark.Code Ann. § 4–75–704 did not apply to cigarette retailers seeking to compete with retailers within a border zone was arbitrary and capricious; and (10) that McLane was entitled to a declaration that Ark.Code Ann. § 4–75–704 allows a competitor outside of a border zone to meet the price of a competing wholesaler or retailer located inside a border zone.

The Board answered the amended petition, and both parties filed pretrial briefs with the circuit court. On June 15, 2009, the circuit court conducted a bench trial on McLane's petition, and at the outset, the circuit court took McLane's petition for judicial review under the APA under advisement. For purposes of its declaratory-judgment claims, McLane presented the deposition testimony of Charlie Davis, a former director of the Board from August 1999 to February 2006, and Ron Rivers, chairman of the Board. In addition, it presented testimony from Kevin Koch, treasurer for McLane; Del Rush, an audit partner for Frost, PLLC, and certified

public accountant; and Dr. David Kurtz, a professor of marketing.

On July 10, 2009, the Board moved to dismiss McLane's declaratory-judgment claims, asserting that McLane had "failed to present sufficient evidence to meet its burden of proof on any of [its] claims." McLane responded, and, on January 21, 2010, the circuit court filed its findings of fact and conclusions of law. On February 11, 2010, the circuit court filed its amended findings of fact and conclusions of law.[3] There, the circuit court found, in pertinent part:

28. The Court hereby finds that the ATCB did not act arbitrarily and capriciously in determining that, for purposes of the Unfair Cigarette Sales Act, "patronage dividends" paid by licensed wholesalers organized as cooperatives to their cigarette retailer members do not constitute a "rebate in price or concession of any kind in connection with the sale of cigarettes" within the meaning of Ark.Code Ann. § 4–75–708. Moreover, the Court finds that the ATCB did not act arbitrarily and capriciously in determining that licensed wholesalers that are organized as cooperatives are properly considered "buying pools" for purposes of the Unfair Cigarette Sales Act and that "patronage dividends" paid to the retail members of a cooperative constitute direct or indirect profits of the buying pool.

. . . .

32. The Court hereby finds that McLane has failed to meet its burden of proof on its claim that the ATCB acted arbitrarily and capriciously in declaring that "patronage dividends" returned by licensed wholesalers organized as cooperatives to their cigarette retailer members do not constitute a "rebate in price or concession of any kind in connection with the sale of cigarettes" within the meaning of the Unfair Cigarette Sales Act.

. . . .

35. The Court hereby finds that McLane has failed to meet its burden of proof on its claim that the ATCB's interpretation separates cooperatives from other cigarette wholesalers. The Court further finds that McLane has failed to meet its high burden of proof on its claim that the Unfair Cigarette Sales Act constitutes special legislation, in violation of Amendment 14 to the Arkansas Constitution.

. . . .

39. The Court hereby finds that the ATCB did not act arbitrarily and capriciously in determining that Ark.Code Ann. § 4–75–704, which permits cigarette wholesalers to reduce their prices to meet competition in good faith, applies to the cost charged to the retailer at the time of delivery as reflected on the wholesaler's invoice or contemporaneous payment documentation but does not apply to later payments or concessions. The Court further finds that the ATCB did not act arbitrarily and capriciously in determining that McLane cannot reduce its price to its retailers to match the invoice price at which the cooperative sells cigarettes less any portion of a patronage dividend apportionable to the sale of cigarettes.

. . . .

43. The Court hereby finds that McLane has failed to meet its burden of proof on its claim that the ATCB acted arbitrarily and capriciously in declaring

3. The circuit court's order stated that the amended findings were "filed for the sole purpose of including the attachments that were referenced but not attached" to its prior order.

that patronage dividends may not be considered when meeting competition pursuant to Ark.Code Ann. § 4–75–704, that meeting competition is limited to the cost charged to the retailer at the time of delivery as reflected on the wholesaler's invoice or on contemporaneous payment documentation, and that McLane cannot take any portion of a patronage dividend paid by a cooperative wholesaler to a cooperative retail member into account when meeting competition.

. . . .

46. The Court hereby finds that McLane has failed to meet its burden of proof on its claim that the ATCB's interpretation separates cooperatives from other cigarette wholesalers. The Court further finds that McLane has failed to meet its high burden of proof on its claim that the Unfair Cigarette Sales Act constitutes special legislation, in violation of Amendment 14 to the Arkansas Constitution.

. . . .

50. The Court hereby finds that the ATCB did not act arbitrarily and capriciously in advising in Opinion 2007–004 that although provision by wholesalers to retailers of certain order-entry systems at no cost to facilitate the order of cigarettes and free shelf stocking would constitute a rebate or concession as defined in Ark.Code Ann. § 4–75–708, there would be no enforcement action under the circumstances of the hypothetical.

. . . .

51. With regard to McLane's request for a declaratory judgment, stating that the legal interpretation set out in ATCB Opinion No.2007–004, Section 9 of the ATCB Rules and Regulations and Ark. Code Ann. § 4–75–708 are void for vagueness, this Court finds that McLane

lacks standing to seek this declaratory judgment, as there is no case or controversy upon which this Court has jurisdiction to decide this question.

. . . .

53. In Count IV of the Amended Petition, McLane seeks a declaration that the position announced in ATCB Opinion 2007–004 that, although provision by wholesalers to retailers of certain order-entry systems at no cost to facilitate the order of cigarettes and free shelf stocking would constitute a rebate or concession as defined in Ark.Code Ann. § 4–75–708, there would be no enforcement action under the circumstances of the hypothetical is unconstitutionally vague, and enforcement is arbitrary and capricious. McLane further seeks a declaration that ATCB Rules and Regulations, Section 9, and Ark.Code Ann. § 4–75–708 are void for vagueness, lacking any ascertainable standard of what activity is permitted by the ATCB and what is prohibited.

54. On this count, the Court finds that McLane lacks standing to seek this declaratory judgment, as there is no case or controversy upon which this Court has jurisdiction to decide this question.

. . . .

56. In Count VII of its Amended Petition, McLane seeks a declaration that an ATCB advisory opinion, which concluded that cigarette retailers outside of a "border zone" may not reduce their prices to meet competition from cigarette retailers inside a "border zone," which has since been withdrawn by that agency, was arbitrary and capricious. McLane further seeks a declaration from this Court that Ark.Code Ann. § 4–75–704 permits a cigarette retailer outside of a "border zone" to

meet the price of a competing cigarette retailer inside a "border zone."

57. On this count, the Court finds that McLane lacks standing to seek this declaratory judgment, as there is no case or controversy upon which this Court has jurisdiction to decide this question.

McLane now appeals.

## I. APA

### A. Whether the Board's Decision in Opinion 2007–003 Finding That Patronage Dividends Were Not Rebates Was Arbitrary and Capricious

■ For its first point on appeal, McLane argues that the Board's Opinion 2007–003 was arbitrary and capricious, as McLane claims that patronage dividends paid by a cooperative constitute illegal rebates, prohibited by Ark.Code Ann. § 4–75–708(b) (Supp.2007). However, the Board responds that because a cooperative is not a wholesaler but a buying pool for purposes of the Act, a cooperative is excluded from the prohibition set forth in section 4–75–708(b). It explains that while a cooperative may be licensed as a "wholesaler" for purposes of the Arkansas Tobacco Products Tax Act of 1977, such a designation does not render that cooperative a wholesaler for purposes of section 4–75–708(b), because there is a separate definition for wholesaler within the Unfair Cigarette Sales Act. Alternatively, the Board claims, even were this court to hold that cooperatives were not buying pools for purposes of the Act, its opinion that patronage dividends were not rebates should still be affirmed because to hold otherwise would eliminate cooperatives from doing business under the Act.

Judicial review of administrative decisions is governed by the APA, which provides, in pertinent part, that a circuit court may reverse or modify an agency decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. See Ark.Code Ann. § 25–15–212(h) (Repl. 2002). It is well settled that this court's review is limited in scope and is directed not to the decision of the circuit court but to the decision of the administrative agency. See Northport Health Servs. v. Arkansas Dep't of Human Servs., 2009 Ark. 619, 363 S.W.3d 308.

■ When conducting our review, we keep in mind that administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies. See id. With respect to the interpretation of statutes, we review issues of statutory interpretation de novo; however, we have held that the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. See id.; see also Seiz Co. v. Arkansas State Highway & Transp. Dep't, 2009 Ark. 361, 324 S.W.3d 336.

Here, McLane urges that the Board's Opinion 2007–003 was arbitrary and capricious. In that opinion, the Board concluded, as already set forth, that because a cooperative would be considered a "buying pool" under the Act, its patronage dividend would not be considered a rebate or concession under Ark.Code Ann. § 4–75–708. Notwithstanding the great deference

to which the Board is entitled, we hold that the Board's interpretation of the statutes at issue was clearly wrong.

Arkansas Code Annotated § 4–75–708(b) provides that

[i]t shall be unlawful for any wholesaler, retailer, or salesperson to offer a rebate in price, to give a rebate in price, to offer a concession of any kind, or to give a concession of any kind or nature whatsoever in connection with the sale of cigarettes with intent to injure competitors or destroy or substantially lessen competition.

"Any offer of a rebate in price or the giving of a rebate in price or an offer of a concession or the giving of a concession of any kind in connection with the sale of cigarettes" shall be prima facie evidence of intent to injure competitors and destroy or substantially limit competition. Ark.Code Ann. § 4–75–708(e)(2). Neither rebate nor concession is defined by the Act; however, section 9 of the Board's Rules and Regulations defines "rebate" or "concession" as

any direct or indirect:

(1) financial incentive, (including, but not limited to, extended credit) inducement, allowance, compensation, other benefit or Tying Agreement (as defined herein) offered or extended to any Customer Of A Wholesaler (as defined here) in connection with the sale of cigarettes;

(2) providing of advertising, promotional or marketing products, displays, give away items or services to any Customer Of A Wholesaler, with exception of those materials or displays provided by the manufacturers which are delivered by the Wholesaler; or

(3) providing any of the above to any affiliate, owner, subsidiary or agent of any Customer Of A Wholesaler.

175–00–001 Ark. Code R. § 9 (Weil 2008). Regarding patronage dividends, this court has held that such dividends, payable by a cooperative, "are refunds, or rebates, due all customers of the cooperative regardless of stock ownership," which result "in a refixing and reduction of the original charge ... and a corresponding increase in the net proceeds." *Houck v. Birmingham*, 217 Ark. 449, 454–55, 230 S.W.2d 952, 955 (1950). In light of the fact that we have previously considered a patronage dividend to be a rebate, it is clear to this court that a patronage dividend would indeed constitute a rebate or concession as defined by the Board. That being said, we turn then to consider whether the antirebating statute applies to cooperatives.

When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See Arkansas Beverage Retailers Ass'n, Inc. v. Moore*, 369 Ark. 498, 256 S.W.3d 488 (2007). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *See id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *See id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *See id.* This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *See id.*

Our review of section 4–75–708(b) reveals that it prohibits only wholesalers, retailers, or salespersons from offering re-

bates, which the Board found did not include cooperatives. We disagree. "Wholesaler" is defined by the Act and means and includes:

(A) Any person *other than a buying pool* as defined in subdivision (2) of this section, wherever resident or located, who brings or causes to be brought into this state unstamped cigarettes purchased directly from the manufacturer thereof and who maintains an established place of business where substantially all of the business is the sale of cigarettes and related merchandise at wholesale to cigarette licensees and where at all times a substantial stock of cigarettes and related merchandise is available for resale, if seventy-five percent (75%) thereof are sold to retailers or other wholesalers not connected with the wholesaler by reason of any business connection or otherwise;

(B) Any person retailing cigarettes to consumers, if at least seventy-five percent (75%) of his or her purchases are made directly from the manufacturers thereof;

(C) Any person in this state *other than a buying pool,* as defined in subdivision (2) of this section, who purchases cigarettes from any other person who purchases from a manufacturer, at least seventy-five percent (75%) of which are for purposes of resale to retailers in this state not connected with the wholesaler by reason of any business connection or otherwise and who maintains an established place of business where cigarettes and related merchandise are sold at wholesale to persons licensed under this subchapter, and where at all times a substantial stock of cigarettes and related merchandise is available to all retailers for resale; and

(D) Any person in this state who acquires cigarettes solely for the purpose of resale in cigarette vending machines, provided the person operates thirty (30) or more machines.

Ark.Code Ann. § 4–75–702(12) (Supp.2007) (emphasis added). A plain reading of the definition results in the exclusion of buying pools from being considered wholesalers. "Buying pool" is defined by the Act as

any combination, corporation, association, affiliation, or group of retail dealers operating jointly in the purchase, sale, exchange, or barter of cigarettes, the profits of which accrue directly or indirectly to the retail dealers.

Ark.Code Ann. § 4–75–702(2). While the Board found that a cooperative was considered a buying pool for purposes of the Act, the statute makes clear that a buying pool is still considered a retailer for purposes of the Act:

"Retailer" means and includes any person who is engaged in this state in the business of selling cigarettes at retail and includes any group of persons, cooperative organizations, buying pools, and any other person or group of retailers purchasing cigarettes on a cooperative basis from licensed distributors or wholesalers. Any person placing a cigarette vending machine at, on, or in any premises shall be deemed to be a retailer for each such vending machine.

Ark.Code Ann. § 4–75–702(8).

The foregoing statutes are clear and when given their plain meaning make evident that a cooperative, by virtue of being considered a retailer, is prohibited from providing rebates. Because a patronage dividend, as previously defined by this court, is clearly a rebate as that term is defined by the Board, we hold that the Board, while entitled to great deference in its statutory interpretation, was clearly wrong in this instance.

▇ Notwithstanding our holding that the Board's consideration of cooperatives as buying pools exempt from the antirebating provision was clearly wrong, the Board encourages this court to follow the lead of the Nevada Attorney General in Op. Nev. Att'y Gen. No. 10 (1991); we decline to do so. In that opinion, the Nevada Attorney General opined that, despite the fact that patronage dividends were basically rebates, were it to construe the Nevada antirebating provision to prohibit patronage dividends, "then we would in effect be eliminating cooperative corporations as a form of doing business.... It is unlikely that in enacting [the antirebating provision] the Legislature intended to so penalize an otherwise valid statutorily authorized method of doing business." However, as already set forth, the language ⌊21⌋of our statute is plain and unambiguous. As such, the Board's opinion was clearly wrong. We therefore reverse the Board's Opinion 2007–003.

B. *Whether the Board's Opinion 2007–002 Finding That McLane Could Not Meet Cooperative–Competitor's Pricing by Factoring in Patronage Dividends Was Arbitrary and Capricious*

▇ McLane next argues that the Board's Opinion 2007–002, in which it opined that McLane could not reduce its price to retailers to match that at which a cooperative sells, less any patronage dividend, was arbitrary and capricious. It contends that there is no language within the Act limiting the meeting-competition allowance to a competitor's invoice price. Instead, McLane maintains, the Act's language should be applied to net pricing, which would take into account any patronage dividend paid by a cooperative. The Board responds, reiterating its argument that patronage dividends are not rebates. It further asserts that were McLane permitted to meet competition pricing taking into account patronage dividends, it would be faced with significant administrative-enforcement issues.

Arkansas Code Annotated § 4–75–704(a)(1) (Repl.2001) provides that "[a]ny wholesaler may advertise, offer to sell, or sell cigarettes at a price made in good faith to meet the price of a competitor who is rendering the same type of service and is selling the same article at cost to the competing wholesaler as defined by this subchapter." In its request for an advisory opinion from the Board, McLane sought permission to match the price offered by a cooperative including any patronage dividend; the Board, however, advised that McLane could not do so. We cannot say that the Board's interpretation of the statute was clearly wrong, as it reached the right result.

▇ ⌊22⌋The plain language of section 4–75–704(a)(1) allows a wholesaler to sell at a price "made in good faith" to meet the price of a competitor. Because patronage dividends paid to retailers by cooperatives constitute illegal rebates under section 4–75–708(b) for the reasons set forth above, any attempt by a wholesaler to match that price could in no way be "made in good faith." For that reason, we cannot say that the Board's Opinion 2007–002 finding that McLane could not reduce its price to its retailers to match the invoice price at which a cooperative sold cigarettes less the patronage dividend was neither clearly wrong, nor arbitrary and capricious.

C. *Whether the Board's Opinion 2007–004 Finding That the Provision of Free HandHeld Devices and Free Shelf–Stocking Services Were Concessions Was Arbitrary and Capricious*

▇ McLane, for its third point on appeal, states in a single sentence, within its argument that the circuit court erred in

finding that it lacked standing, that the Board's Opinion 2007–004, which found that the provision of free hand-held devices and free shelf-stocking services were concessions, was arbitrary and capricious. While offering no response as to whether its opinion was arbitrary and capricious, the Board merely responds on the standing issue relating to McLane's request for declaratory relief on this opinion.

It appears from our review of McLane's arguments that McLane contends that because the Board's opinion was ultra vires, it was arbitrary and capricious. To the extent that McLane's argument can be taken as challenging the Board's opinion as arbitrary and capricious, it is mistaken.

Here, the Board concluded that while the provision of free hand-held devices and free shelf-stocking services might constitute a concession, it did not intend to initiate enforcement action in such a case. However, for an act to be "ultra vires," it must be "beyond the agency's or officer's legal power or authority." *Solomon v. Valco, Inc.*, 288 Ark. 106, 108, 702 S.W.2d 6, 7 (1986). The Board's Opinion 2007–004 was an *advisory* opinion, by which the Board took no action, but merely issued its opinion on a question presented to it. As such, we are hard-pressed to say that its opinion could be in any way ultra vires. For this reason, we cannot say that the Board's opinion was arbitrary and capricious.

## II. *Declaratory Relief*

A. *Whether the Circuit Court Erred in Refusing to Grant Declaratory Relief on McLane's Claim That Patronage Dividends Constituted Rebates under the Act*

For its fourth point on appeal, McLane argues that the circuit court erred in refusing to grant it declaratory relief on its claim that patronage dividends constituted rebates for purposes of the Act. However, we have already concluded that patronage dividends do constitute rebates under section 4–75–708(b) and that the Board's interpretation to the contrary was clearly wrong, thereby warranting reversal of the Board's opinion. There is no need to address the same argument by McLane in the context of declaratory relief, where it has already received relief on this argument. Accordingly, we decline to address it.

B. *Whether the Circuit Court Erred in Refusing to Grant Declaratory Relief on McLane's Price–Matching Claim*

McLane next argues that the circuit court erred in refusing to grant it declaratory relief on its claim that it should be able to meet the competitive price of a cooperative who pays patronage dividends to its retailers. It urges that the plain language of section 4–75–704, providing a meeting-competition exception to the minimum-price rule, in no way limits cost to that charged at the time of delivery to the retailer and reflected on the wholesaler's invoice. It contends that because a cooperative's patronage dividend serves to reduce a retailer's ultimate cost, McLane should be able to match that ultimate cost pursuant to section 4–75–704. For this reason, it claims, it was entitled to declaratory relief. The Board responds that because patronage dividends constitute a pro rata distribution of net profits and do not serve to reduce the price of goods sold, McLane is not entitled to meet a cooperative's cost inclusive of any patronage dividend.

In reviewing a bench trial, this court has held that a clearly erroneous standard of review will apply. *See Poff v. Peedin*, 2010 Ark. 136, 366 S.W.3d 347. However, in the instant case, McLane

sought declaratory relief that requires an interpretation of statutes. When we review issues of statutory interpretation, we do so de novo. *See Ryan & Co. AR, Inc. v. Weiss,* 371 Ark. 43, 263 S.W.3d 489 (2007). It is for this court to decide what a statute means, and we are not bound by the circuit court's interpretation. *See id.* The basic rule of statutory construction is to give effect to the intent of the General Assembly. *See id.* In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See id.* This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *See id.* When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *See id.* However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *See id.* This court will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *See id.* This court seeks to reconcile statutory provisions to make them consistent, harmonious, and sensible. *See id.*

We cannot say that the circuit court clearly erred in denying declaratory relief. As previously set forth, the plain language of the statute requires that any price matching be "made in good faith." It is axiomatic that should McLane meet the price of a cooperative knowing that the patronage dividends were illegal rebates, its action in meeting that price would not be made in good faith. Accordingly, we hold that the circuit court did not err in denying McLane declaratory relief on this point.

### C. *Whether the Circuit Court Erred in Finding That McLane Lacked Standing to Seek Declaratory Relief Relating to Opinion 2007–004*

For its fifth point on appeal, McLane argues that the circuit court erred in finding that it lacked standing to seek declaratory relief relating to Opinion 2007–004, which found that the provision of free hand-held devices and free shelf-stocking services constituted concessions, but that there was no intention by the Board to enforce possible violations. It avers that there was a justiciable controversy between it and the Board, because it has a right to meet its competition and its rights are affected by the Board's opinion. The Board responds that the circuit court did not err in finding a lack of standing. It claims that there was no evidence before the circuit court that either the provision of free hand-held devices or free shelf-stocking services had occurred. It contends that given the testimony by McLane's treasurer that it had decided to charge its retailers for the provision of hand-held devices, McLane's declaratory-relief petition presented merely hypothetical questions. While it acknowledged in the opinion that it did not anticipate enforcing any such violations, the Board further asserts on appeal that it did not disavow ever taking such action. Accordingly, it urges this court to affirm the circuit court's finding that McLane lacked standing.

Declaratory judgments are used to determine the rights and liabilities of respective parties. *See Stilley v. James,* 345 Ark. 362, 48 S.W.3d 521 (2001). The purpose of the declaratory-judgment statutory scheme "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Ark.Code Ann. § 16–111–

102(b) (Repl.2006). Pursuant to Ark.Code Ann. § 16–111–104 (Repl.2006),

> [a]ny person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

This court has observed that, in order to obtain declaratory relief, the requisite precedent facts or conditions generally held to be required include:

> (1) ... a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy; in other words, a legally protectable interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

*MacSteel Div. of Quanex v. Arkansas Oklahoma Gas Corp.,* 363 Ark. 22, 35, 210 S.W.3d 878, 886 (2005) (quoting *Andres v. First Arkansas Dev. Fin. Corp.,* 230 Ark. 594, 606, 324 S.W.2d 97, 104 (1959)). The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *See Arkansas Beverage Retailers Ass'n, Inc.,* 369 Ark. 498, 256 S.W.3d 488.

Here, the circuit court held that McLane lacked standing to seek declaratory relief because there was no case or controversy upon which the court had jurisdiction to decide the question, and we cannot say that the circuit court erred. McLane sought a declaration that the Board's regulation defining rebate and concession and Ark.Code Ann. § 4–75–708 were void for vagueness, premised, in part, on the Board's Opinion 2007–004. The problem, however, is that the Board's opinion was advisory, and there had been no indication that McLane ever intended to provide free hand-held devices or free shelf-serving services, nor was there any evidence that McLane would be penalized for doing so.

McLane's own treasurer testified that following its request to the Board, which resulted in Opinion 2007–004, it had "since decided that we're going to charge for that [hand-held] device." Moreover, the Board's opinion gave no indication that it would penalize McLane should it decide to offer such a device at no charge. Under these circumstances, then, it is evident that McLane seeks declaratory relief on events only hypothetical in nature. This court has held that declaratory relief does not lie in such cases:

> The Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote.

*Cummings v. City of Fayetteville,* 294 Ark. 151, 154–55, 741 S.W.2d 638, 639–40 (1987) (quoting *Andres,* 230 Ark. at 606–07, 324 S.W.2d at 104–05). Because any prejudice to McLane relating to this claim would have been purely speculative, we hold that the circuit court did not err in finding that McLane lacked standing.

## D. *Whether the Circuit Court Erred in Finding That McLane Lacked Standing to Seek Declaratory Relief Relating to Opinion 2007–001*

█ Next, McLane argues that the circuit court erred in finding that it lacked standing to seek declaratory relief regarding the Board's Opinion 2007–001 on border-zone pricing. It contends that because the Board initially opined that non-border-zone retailers could not meet the competitive price of border-zone retailers, but then reversed itself in Opinion 2007–001 and found that they could, it is entitled to clarity, by way of a declaratory judgment, "as to its pricing prerogatives both for retailers to whom it sells as well as for itself." The Board responds that, as was the case in the prior point, McLane lacked standing because no justiciable controversy existed.

█ It is clear to this court that McLane's arguments are without merit, as McLane failed to demonstrate any evidence of controversy. A review of the record reveals that it asked for and received an advisory opinion on the subject from the Board; however, as already noted, a declaratory judgment "does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain." *Cummings*, 294 Ark. at 154–55, 741 S.W.2d at 640. Here, McLane has failed to point this court to any facts or evidence to suggest that it or one of its retailers was faced with the issues on which it sought a declaration; thus, there is no evident controversy. Accordingly, we hold that the circuit court did not err in finding that McLane lacked standing.

### III. *Constitutional Claim*

McLane, for its final point on appeal, argues that the Act as interpreted by the Board, constitutes special legislation, rendering it unconstitutional. McLane urges that the interpretations opined by the Board provide an exceptional advantage to cooperatives that is not rationally related to the purpose of the Act. Specifically, it contends that by allowing cooperatives to operate free from the prohibition against rebates or concessions and by prohibiting it from meeting the market price of the cooperatives, the Board has conferred an exclusive benefit on a narrow class of wholesalers and imposed a significant burden on McLane. The Board responds that the Act is presumed constitutional and that any perceived competitive advantage derived from the ability to distribute patronage dividends could be realized by McLane organizing as a cooperative.

We hold that McLane's argument regarding special legislation is moot. Because we have already held that patronage dividends constitute illegal rebates, any alleged competitive advantage to cooperatives will no longer exist. For all of the foregoing reasons, we affirm in part and reverse in part the Board, and we affirm the circuit court's order.

Board affirmed in part and reversed in part; circuit court affirmed.